A91A1996, A91A1997. GEORGIA PORTS AUTHORITY v.
SERVAC INTERNATIONAL; and vice versa.
(415 SE2d 516)

SOGNIER, Chief Judge.

Servac International brought suit against Georgia Ports Authority to recover damages arising out of an ammonia leak that contaminated portions of its cargo (frozen beef livers and chicken legs), which was stored in a GPA warehouse awaiting shipment to a purchaser in Egypt. After the trial court entered summary judgment in favor of Servac on GPA's liability for the damage, an issue not contested on appeal, a bench trial was had on the issue of the amount of damages. Both parties appeal from the trial court's judgment.

1. In Case No. A91A1996, GPA argues that the report of a survey conducted after the loss constituted a binding agreement between the parties that the invoice price of the damaged goods, as determined by that survey, reflected the total amount of damages to which Servac was legally entitled. The survey report, which was jointly conducted with GPA and representatives of Servac's interest in the goods, provided that it was issued "without prejudice" and was undertaken "for the purpose of ascertaining the extent of damage alleged to have been sustained due to an ammonia leak in the cold storage warehouse." The report set forth, inter alia, the results of the surveyor's investigation into the cause of the damage; how the surveyor selected representative cartons for examination; the outcome of the examination; the invoice prices of the percentage of cartons determined to be damaged; and the salvage bids received and accepted for the damaged goods.

"The cardinal rule of construction is to ascertain the intention of the parties." OCGA § 13-2-3. " 'The language which the parties have used will be looked to for the purpose of finding that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement.' [Cits.]" *Goff v. Cooper,* 110 Ga. App. 339, 343 (138 SE2d 449) (1964). "The language of the contract should be construed in its entirety, and should receive a reasonable construction, and not be extended beyond what is fairly within its terms. Where the language is unambiguous, and but one reasonable construction of the contract is possible, the court must ex-

pound it as made." (Punctuation and citations omitted.) *Cutledge v. Aetna Life Ins. Co.*, 53 Ga. App. 473, 475 (186 SE 208) (1936). The survey report contained no language expressly stating or implicitly indicating that it was the parties' intent in conducting the survey that the survey figures would conclusively determine all damages to which Servac was legally entitled. Indeed, a contrary intent is indicated by the statement in the survey report that its figures did not reflect certain handling and storage charges incurred by the consignee. While it does appear that the parties to this appeal considered the amounts within the ambit of the survey report, i.e., invoice and salvage prices, to be determinative of those matters, we do not agree with GPA that the survey report is subject to interpretation as determinative of matters not within its ambit, such as whether a definite contract existed between Servac and its Egyptian customer so as to enable Servac to recover its lost profits as an item of damages.

Therefore, because the intention of the parties, as determined from the language of the entire contract, did not reflect that the survey report constituted a binding determination of all of Servac's damages and the admiralty cases cited by GPA do not support its contention that survey reports in the maritime world are construed differently from other contracts, this argument presents no basis for reversing the trial court's judgment.

2. GPA next argues that as a matter of law Servac, as bailor of the goods, was not entitled to recover its lost profits from GPA as a result of GPA's breach of its duty to Servac. See OCGA §§ 11-7-204 (1), 44-12-43. This argument is based on GPA's contention that the trial court included lost profits as part of the fair market value of the goods by looking to the port of destination, i.e., Egypt, where the sale of the goods to the purchaser would have been completed, rather than the value of the goods in Savannah, where at the time in issue GPA's position was that of bailee, not carrier of the goods. However, the trial court in its order clearly stated that damages for lost profits were included in its calculations because the trial court found those damages were within the contemplation of the parties and flowed naturally from the breach of GPA's duty to Servac. The record establishes that in determining the fair market value of the goods the trial court applied the proper measure of damages, see generally *Harper Warehouse v. Henry Chanin Corp.*, 102 Ga. App. 489, 495-496 (11) (116 SE2d 641) (1960) (approving charge setting forth the proper measure), then added Servac's lost profits into its calculations in the form of consequential damages, not as part of the fair market value of the goods in Egypt.

The question is thus whether lost profits as consequential damages can be recovered by Servac. Article 7 of the Uniform Commercial Code, OCGA § 11-7-101 et seq., did not repeal or affect Georgia bail-

ment law. See *A.A.A. Parking v. Bigger*, 113 Ga. App. 578, 582 (2) (149 SE2d 255) (1966). While the applicability of OCGA § 44-12-43 to this bailment case is unchallenged, the applicability of Article 7 of the UCC, which addresses primarily the use of warehouse receipts, is more problematic since it is unclear whether warehouse receipts were issued in the case sub judice.[1] However, OCGA § 11-7-204 (1) is not limited to situations where warehouse receipts were issued, but instead provides in general that "[a] warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances . . . ." Therefore, because OCGA § 11-7-204 (1) is not restricted to warehousemen who have issued warehouse receipts, we conclude that OCGA § 11-7-204 (1) is applicable in the case at bar.

No Georgia case has addressed the question whether lost profits as consequential damages can be recovered under OCGA § 11-7-204. We are persuaded by Uniform Commercial Code authorities James White and Robert Summers, as well as foreign authority following their position, *Indemnity Marine Assur. Co. v. Lipin Robinson Warehouse Corp.*, 297 NW2d 846, 850-851 (Mich. App. 1980), that in appropriate cases OCGA § 11-7-204 (1) should be construed to cover lost profits as consequential damages. White & Summers, Uniform Commercial Code (3rd ed.), § 21-3, pp. 142-143. As reasoned in White & Summers, "[a] plaintiff may sustain two kinds of damage [to goods stored by a warehouseman]: direct damage in the form of loss or injury to the goods themselves and consequential damage, such as lost profits. A plaintiff may deposit goods in a warehouse expecting to resell them and, after contracting to resell at a profit, find that he cannot do so because of loss or damage to the goods due to the warehouseman's negligence. . . . A recovery limited by the language of section 7-204 (1) to merely [the market value of plaintiff's goods] would not always make the plaintiff whole."

The theory behind Georgia bailment law is in accord with this position. In *Bennett v. Associated Food Stores*, 118 Ga. App. 711, 715 (165 SE2d 581) (1968), a bailment case involving a contract for hire, in order to " '[place the plaintiff] in the position he would have been in had the contract been performed,' [cits.]" id., we authorized recovery of lost profits subject to the plaintiff adducing "evidence which will furnish the jury data sufficient to enable them to estimate with reasonable certainty the amount of the damages. [Cits.]" Id. at 716. Since bailment actions can be ex contractu or ex delicto, see *A.A.A.*

---

[1] No question exists that GPA is a warehouseman as defined in OCGA § 11-7-102 (1) (h).

*Parking*, supra at 580-581 (1), we note that the "reasonable certainty" requirement applies to plaintiffs seeking to recover lost future profits derived from a transaction that was never completed whether because of a contract breached by the defendant or a tort committed by him. See *Bennett v. Smith*, 245 Ga. 725, 726-727 (267 SE2d 19) (1980).

3. We now address GPA's argument that Servac's evidence regarding its lost profits was too conjectural and speculative to be the basis for recovery. While "[a]n allowance for damages cannot be based on guesswork[, and l]oss of anticipated profits which is completely conjectural is not recoverable," (citations and punctuation omitted) *Phoenix Airline Svcs. v. Metro Airlines*, 194 Ga. App. 120, 126 (390 SE2d 219) (1989), rev'd on other grounds, 260 Ga. 584 (397 SE2d 699) (1990), " '[t]he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted.' [Cits.]" *Farmers Mut. Exchange v. Dixon*, 146 Ga. App. 663, 664-665 (5) (247 SE2d 124) (1978). In the present case there is no uncertainty that the cause of the damage to Servac's goods was GPA's negligence in allowing a gate valve to leak ammonia into the warehouse where Servac's goods were stored. Servac's general manager, A. M. Abdelkader, gave specific figures regarding the amount of goods damaged by the ammonia leak, testified that the damaged goods were part of a larger shipment that had been sold to an Egyptian purchaser, and testified regarding an invoice, admitted into evidence, which he stated served as the contract for the sale and which set forth the price negotiated for the entire shipment. His testimony that due to time constraints, Servac was not able to replace the damaged goods and thus was not able to ship to the Egyptian purchaser the entire amount of goods in the contract distinguishes the case sub judice from *Caterpillar Overseas, S.A. v. Marine Transport*, 900 F2d 714, 724-725 (VII) (4th Cir. 1990), cited by GPA, wherein lost profits were not allowed because the injured party was able to mitigate its lost profit damages by providing the overseas purchaser with a replacement for the damaged good. Abdelkader also testified that the Egyptian purchaser did not pay Servac for the missing percentage of goods.

In determining whether Servac met its burden of proof, we find that it proved the quantum of damages to a reasonable degree of certainty as provided in *Farmers Mut. Exchange*, supra. All of the facts were placed in evidence from which the trial court, as trier of fact, could make a reasonable calculation of Servac's loss. See generally *B*

& D Carpet Finishing Co. v. Gunny Corp., 158 Ga. App. 621, 622 (281 SE2d 354) (1981). Accordingly, the trial court did not err by including Servac's lost profits in the amount awarded Servac in the judgment.

4. The sole issue in Servac's cross-appeal is whether the trial court erred by not including in its judgment an award of pre-judgment interest calculated from the date the goods sustained damage to the date judgment was entered. Servac contends its damages were liquidated and thus pre-judgment interest was required to be awarded. OCGA § 7-4-15.

"A liquidated demand is 'an amount *certain* and *fixed*, either by the act and agreement of the parties or by operation of law; a sum which cannot be changed by the proof; it is so much or nothing; . . .' [Cit.]" *Gorlin v. Halpern*, 184 Ga. App. 10, 12 (360 SE2d 729) (1987), rev'd on other grounds, *Burgess v. Gorlin*, 258 Ga. 127 (365 SE2d 405) (1988). "A debt is liquidated when it is certain what is due and how much is due . . . . [f]or although it may appear that something is due, if it does not also appear how much is due, the debt is not liquidated. An unliquidated claim is one which one of the parties to the contract cannot alone render certain." *Roberts v. Prior*, 20 Ga. 561, 562 (1856).

At the time of the ammonia leak at the warehouse where Servac's goods were stored, it was not certain whether any of the goods had sustained damage, what was the extent of the damage, or what was the value of the goods damaged. There is no evidence that the bailment agreement between the parties addressed these matters or otherwise required the parties to submit determination of such matters to a surveyor whose decision would then bind the parties. Contrary to Servac's argument, the "certainty" regarding the damage sustained by Servac was not because the damage was liquidated but rather was because the parties apparently agreed after the injury occurred to have the damage surveyed and to consider determinative the results of that survey. See Division 1, supra. Given that the underlying damage to the goods was not liquidated, we do not agree with Servac that its lost profits were liquidated merely because recovery of consequential damages was within the contemplation of the parties.

Accordingly, the trial court properly did not award Servac pre-judgment interest.

*Judgments affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED FEBRUARY 11, 1992.

*Brennan, Harris & Rominger, Edward T. Brennan,* for appellant. *Clark & Clark, Fred S. Clark,* for appellee.