A92A1993. COFFEE BUTLER SERVICE, INC. v. SACHA.
(430 SE2d 149)

ANDREWS, Judge.

The basic facts of this case are set out in its previous appellate appearance. *Coffee Butler Svc. v. Sacha*, 258 Ga. 192 (366 SE2d 672) (1988). They will be supplemented only as needed.

After remand pursuant to that opinion (issued April 7, 1988), Coffee Butler twice amended its claims. The trial court then granted summary judgment to Sacha on Coffee Butler's claims of fraud in the inducement of the contracts and for lost profits allegedly suffered by Coffee Butler as a result of Sacha's breach of the employment contract[1] (Counts I and II of the Second Amended Complaint). Coffee Butler appeals.

1. The fraud count alleged, in pertinent part, that Sacha, *"[a]t the time the parties were negotiating the agreements, . . .* represented to plaintiffs that he would (1) convey all assets of Early Bird; (2) use his best efforts and all of his energy to convert former clients of Early Bird to clients of Coffee Butler and solicit new accounts for Coffee Butler in the area Early Bird had serviced; (3) devote and use his expertise and knowledge to benefit Coffee Butler; and (4) not compete directly or indirectly with Coffee Butler — *all of which he did not intend to perform . . .* to induce plaintiffs into entering the . . . agreements."

" 'The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff. (Cit.) For an action for fraud to survive a motion for summary judgment, there must be some evidence from which a jury could find each element of the tort.' *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989). 'Where there is no evidence (of) scienter, that is, that the

---

[1] The Supreme Court rejected Coffee Butler's contention that it was entitled to summary judgment on its claim that Sacha had anticipatorily breached the Consultant Retention Agreement.

false statement was knowingly made with false design, there can be no recovery. . . .' *Day v. Randolph*, 159 Ga. App. 474, 475 (283 SE2d 687) (1981)." *McCrimmon v. Tandy Corp.*, 202 Ga. App. 233, 234 (1) (414 SE2d 15) (1991).

While the ten-volume record is replete with references to disputes as to the amount of effort expended by Sacha to fulfill the terms of the employment agreement and further the interests of Coffee Butler after the merger, it is devoid of any evidence that, in 1984, when the agreements were negotiated and entered into, he made any fraudulent statements or that he did not intend at that time to carry out the terms of the agreements.

There is evidence that there were six accounts which Sacha did not include in the list of Early Bird accounts merged with Coffee Butler, for which six accounts he maintained no written records and which six accounts paid him directly in cash, which cash he did not report as income. There is no evidence, however, that Coffee Butler was aware of these six accounts before the merger and, therefore, no evidence of any detrimental reliance by it. Further, there is evidence that it was Sacha's intention to attempt to convert these small accounts to Coffee Butler.

"On motion for summary judgment, [defendant Sacha] demonstrated the absence of evidence of fraud, thereby casting upon [Coffee Butler] the burden of presenting specific evidence giving rise to a genuine issue of triable fact. [Cits.]" *McCrimmon*, supra at 234-235. *Demarest v. Moore*, 201 Ga. App. 90, 92 (1) (410 SE2d 191) (1991). That burden has not been met.

Further, any oral representations were subsumed by the written agreements constituting the terms of the merger. *Campbell v. C & S Nat. Bank*, 202 Ga. App. 639, 640 (1) (415 SE2d 193) (1992).

2. Regarding the claim for lost profits as a result of Sacha's breach of his employment contract, the allegation was that "Coffee Butler has suffered additional damage to its business, on-going operations and profits expected to flow from the agreement with Sacha by Sacha's failure to render the services called for under said agreement in an amount not less than $500,000."

After this amendment was added to the complaint in February 1990, additional discovery was engaged in, resulting in Coffee Butler's response to an interrogatory as to the nature of the claim that "[t]he base amount of damages is calculated by the means set out in the attached Exhibits for the period November 1984 through August 1985. Plaintiffs also assert that they are entitled to damages computed upon the above basis for the period extending through November 1985. The cumulative total of the base amount computed through the above period represents continuing losses suffered each succeeding year. These continuing damages are claimed for a period of

five years."

The exhibits consisted of a listing of 248 former Early Bird accounts which were "lost" after the merger, due to Sacha's failure to render services agreed upon. Of these accounts, it was shown that 140 left for reasons having nothing to do with Sacha, including office relocations or mergers; bankruptcies; construction sites closed at completion of the project; the loss of two law firms which had represented Sacha in the merger and litigation; and 28 accounts which Coffee Butler determined to "pull" because of the low volume of coffee being consumed. As for the remainder, there was no evidence that any account left because of any action taken or not taken by Sacha. In support of his motion, Sacha submitted his own affidavit which stated that he had reviewed the list of "lost accounts" and that he "took no action to the detriment of Coffee Butler which would in any way have caused any of these accounts to discontinue doing business with Coffee Butler either before or after the merger. Specifically, I did not advise any of those accounts to cease doing business with Coffee Butler, and I did not tell any of those accounts anything negative about Coffee Butler's services or products. I made every effort possible under the directions and criteria given to me by Coffee Butler to maintain every account which Coffee Butler advised it wanted to be maintained."

Additionally, the affidavit of Took, a former Early Bird routeman who continued with Coffee Butler as a customer service representative, was submitted. Took went through each account and gave his analysis of the reason for the account leaving. Parts of his analysis were based on statements made to him by employees of the companies which stopped the Coffee Butler Service. While Coffee Butler made a motion to strike this affidavit on the ground it contained inadmissible hearsay, the court did not rule on it before entering the summary judgment and we therefor assume it was implicitly denied. The statements of an agent of one company, made in the course of his employment, to the agent of another received in the course of his employment, regarding the business of the two, is admissible pursuant to OCGA §§ 24-3-33 and 10-6-64. See *Uniflex Corp. v. Saxon*, 198 Ga. App. 445, 446 (3) (402 SE2d 67) (1991).

The evidence presented in opposition to this was the affidavit and deposition of Williams, Coffee Butler's founder and chief executive officer, and the depositions of Hulett and Daw, two veterans of the coffee business tendered as experts by Coffee Butler. Williams acknowledged that, while he would be extremely interested in why any account was lost, he did not contact any of the businesses which cancelled accounts because it would have been too expensive. He nonetheless stated that he felt "very certain that the reason . . . is because of Mr. Sacha's lack of performing in the job of his, sales manager,

account manager, and retention manager for the accounts that he brought over to the merger."

Neither expert had any information on why any of the accounts had left Coffee Butler, but based their analysis solely on the fact that the accounts left and the comparison of the total loss with what each would have anticipated would have been lost based on industry norms.

"While '(a)n allowance for damages cannot be based on guesswork(, and l)oss of anticipated profits which is completely conjectural is not recoverable,' (citations and punctuation omitted) *Phoenix Airline Svcs. v. Metro Airlines*, 194 Ga. App. 120, 126 (390 SE2d 219) (1989), rev'd on other grounds, 260 Ga. 584 (397 SE2d 699) (1990), ' "(t)he rule against the recovery of vague, speculative, or uncertain damages *relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages*. Mere difficulty in fixing their exact amount, *where proximately flowing from the alleged injury*, does not constitute a legal obstacle in the way of their allowance, . . ." (Cits.)' *Farmers Mut. Exchange v. Dixon*, 146 Ga. App. 663, 664-665 (5) (247 SE2d 124) (1978)." (Emphasis supplied.) *Ga. Ports Auth. v. Servac Intl.*, 202 Ga. App. 777, 780 (3) (415 SE2d 516) (1992). There has been just such a failure of proof of causation in this case. Coffee Butler, in the face of the facts of record, may not rest on suppositions and its contention that the jury might make inferences from the mere fact of the loss of the accounts. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Compare *Williamson v. Palmer*, 199 Ga. App. 35, 36 (1) (404 SE2d 131) (1991).

*Judgment affirmed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Cooper, Johnson and Blackburn, JJ., concur. Beasley, P. J., concurs in part and dissents in part.*

BEASLEY, Presiding Judge, concurring in part and dissenting in part.

I respectfully dissent.

1. The movant in summary judgment, Sacha, did not by the evidence "conclusively eliminate all issues" as to the claim for lost profits allegedly caused by breach of his obligations under the employment contract. *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135 (355 SE2d 437) (1987). Respondent Coffee Butler was entitled to "all reasonable and favorable inferences," id., and any doubt must be construed in its favor. *Scott v. Owens-Illinois*, 173 Ga. App. 19, 20 (325 SE2d 402) (1984).

With this in mind, the evidence showed the following: As vice president, Sacha was responsible for sales and account retention. Within the ten months of his employment, approximately a third of

the accounts he had brought into the merger ceased, some for reasons not related to Sacha's servicing of them, but many for reasons unexplained. There is no evidence of new accounts being opened. Yet in the seven years prior to the merger, Sacha had increased sales.

During the period of his employment, Sacha spent time and energy servicing some accounts which were not included in the merger. He was responsible for transitioning his merged accounts into the combined operations. But he did not call on problem accounts, did not share his knowledge about specific accounts which he required other personnel to deal with, did not guide or direct the sales force or conduct sales meetings, did not devote full workdays to his responsibilities, did not assist other personnel when needed, did not give guidance to the in-office customer service staff, and failed to formulate programs to ease the transition for old customers or to increase sales in low-volume accounts. He admitted that some losses in revenue occurred from lost rapport. He took no action to rectify the losses that were occurring.

The accounts brought to the merger by Coffee Butler did not suffer from loss of gross profit as did the accounts which Sacha brought. Coffee Butler's other acquisitions did not result in loss of gross profit but instead resulted in increased volume, even though the owner was not retained to personally bring the business' good will.

All of this, together with the norms in the industry which were testified to, raises a reasonable inference that loss of profits was attributable to Sacha's inattention to sales. Sacha did not pierce the evidence of causal connection.

2. I concur in Division 1.

DECIDED MARCH 18, 1993.

*Whicker, Gandy & Rice, L. Spencer Gandy, Jr.,* for appellant.
*Mozley, Finlayson & Loggins, C. David Hailey, Eric T. Johnson,* for appellee.