A99A0080, A99A0081. GRAVES v. BROWN et al. (two cases).

(516 SE2d 324)

BLACKBURN, Presiding Judge.

Thomas M. Graves appeals from the superior court's grant of summary judgment to Raymond and Shirley Brown and its finding that Graves converted his daughters' federal survivor annuity benefits to his own use. Graves contends that: (1) the court had no subject matter jurisdiction to determine the appropriate use of the federal funds; (2) the court erred by finding that he had any duty to use the federal funds for his daughters' benefit; and (3) the court erred in determining that he converted the funds. For the reasons set forth below, we affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

Graves had two daughters, S. G. and K. G., with Linda Ramsey, who died on March 27, 1994. Graves and Ramsey had been divorced for approximately ten years at the time of her death, and Ramsey had custody of the children. Because Ramsey was a federal employee, her daughters were entitled to certain survivorship benefits, including survivorship annuity payments under the Civil Service Retirement System (CSRS) and insurance benefits pursuant to a Federal Employees' Group Life Insurance (FEGLI) policy.

After Ramsey's death, Graves took custody of S. G. and K. G. In May 1994, Graves applied to the CSRS to receive the survivorship annuity payments for his daughters. In November 1994, the CSRS began paying annuity installments to Graves for the benefit of his daughters. Graves deposited all money received into his own accounts and used some of it for his own purposes. Graves kept no accounting reflecting the use of these funds.

In addition to the CSRS annuity payments, S. G. and K. G. were each entitled to receive $24,000 plus interest from their mother's FEGLI life insurance policy. In order to collect this amount, Graves petitioned the Probate Court of Hall County to be appointed guardian of the property for his daughters, and his petition was granted on August 9, 1995. Subsequently, Graves collected the insurance proceeds, placed them in guardianship accounts, and filed petitions to

encroach upon the corpus of each of his daughters' accounts in the amounts of $2,869 to purchase orthodontic work for K. G. and $12,500 to send S. G. to a youth rehabilitation facility. When Graves requested these encroachments, he did not inform the probate court that he was receiving federal annuity payments, and he represented that he had no other means to pay for the expenses absent an encroachment. On this basis, the probate court granted Graves' encroachment requests.

On June 3, 1997, Graves filed a petition to be dismissed from his appointed position as guardian of the property for his daughters. On that same day, Raymond and Shirley Brown, S. G. and K. G.'s maternal grandparents, objected to Graves' dismissal, claiming that Graves had mishandled his daughters' property. After conducting a hearing on the matter, the probate court denied Graves' petition to be dismissed and found that he failed to keep accurate records, failed to file annual returns, commingled his daughters' funds with his own, and made misrepresentations to the court. Graves appealed this finding to the superior court, and the Browns moved for summary judgment. The superior court granted this motion, affirmed the findings of the probate court, and directed Graves to reimburse $20,438 to S. G. and $13,030 to K. G. In each case, the reimbursement amount was comprised of the improper encroachments Graves received from his daughters' life insurance benefits in addition to the amount of survivorship annuity payments he received on their behalf.

In this appeal, Graves contests only the court's findings with regard to the survivorship annuity payments, not the encroachments made from insurance proceeds. Therefore, we consider only whether the superior court properly ordered Graves to reimburse his daughters for such annuity payments, and the lower court's determination that the encroachments on the FEGLI proceeds must be returned stands.

1. In his first enumeration, Graves contends that the superior court usurped federal jurisdiction by directing him to reimburse his daughters for funds he claims were payable directly from the federal government to him for his personal use. Even if we were to accept Graves' contention that the annuity payments were for his personal use and that he had no obligation to use them for the benefit of his daughters, which we do not, Graves has not pointed this Court to any appropriate authority showing "exclusive federal jurisdiction by affirmative congressional divestment of state jurisdiction." *Garrett v. Ga. Higher Ed. Assistance Corp.*, 217 Ga. App. 415, 416 (3) (457 SE2d 677) (1995). Moreover, as discussed below, Graves was required to use the federal funds for his daughters' benefit, and, as such, the order of the superior court neither usurps nor contradicts the appli-

cable federal laws and regulations.

2. In his second enumeration of error, Graves contends that the superior court erred by overturning the CSRS's decision to pay the annuity to Graves without requiring that he be appointed guardian. Graves argues that the mere fact that the checks were sent to him personally establishes that the federal government determined that such funds could be applied to his own uses, free of any fiduciary or parental obligations and without any accounting. He further argues that the superior court's order fails to recognize the higher authority of federal regulations.

The internal handbook of the CSRS indicates that a child's survivor annuity benefits are paid to: "1. The parent or other person who has care and custody of the child, if there is no court-appointed guardian; 2. The guardian, if one has been appointed by the court; or 3. A child over 18, upon request by the child or other payee on the claim." Based on these provisions, Graves argues that, because the federal government decided to pay the annuity to him without requiring the establishment of a guardianship, Georgia courts cannot now impose any fiduciary duty on him to account for such funds or enforce their use for the benefit of his daughters. This argument, however, is myopic, as it fails to recognize the unambiguous intent behind the CSRS annuity payments in this case — to provide benefits for S. G. and K. G.

The evidence makes it clear that the federal annuity payments in this case were not for Graves' personal use, but for the benefit of his daughters. The survivor annuity statement indicates unequivocally that the payments are for the children of the deceased employee, and the payments are calculated specifically upon the number of surviving children. The tax form issued by the federal government with regard to the payments, Form 1099R, indicates that such payments were made to "THOMAS M GRAVES *FOR 2 CHILDREN.*" (Emphasis supplied.) Moreover, payment of the benefits is contingent on the status of the child. For example, if the child dies or marries, the benefits cease. As the annuity payments are intended to support the child, they are terminated when the need for such support does or should end. Thus, at every turn, the annuity payments in issue concern S. G. and K. G., not their father.

While it is true that CSRS annuity payments may also be available to the spouse of a deceased federal employee, Graves was not married to Ramsey at the time of her death, and payments are not available to ex-spouses. If we were to interpret payment of the funds to Graves in this case as he wishes, we would eviscerate the CSRS regulations by ignoring this patent exclusion, and Graves would be allowed to circumvent the federal scheme by taking benefits intended for his daughters. Therefore, Graves' arguments are misguided, and

the superior court's order requiring him to reimburse his daughters follows the plain intent of the applicable federal regulations.

Graves also argues that the superior court overreached its authority by requiring him to account for survivorship annuity payments made before he became the guardian of his daughters' property. This argument also lacks merit.

> OCGA § 29-2-24 requires that a fiduciary determine and marshal the assets of a ward and make such inventory to the probate court in the same manner as an administrator within four months of qualifying. See Ga. L. 1996, p. 504, § 4; OCGA § 53-7-75. . . . It is a well-settled principle of law, both in this State and other States, that it is the duty of a guardian to take possession and preserve for the benefit of [his] ward all property, real and personal, *within [his] knowledge*, that belongs to [his] ward. At common law the guardian is required to take possession of [his] ward's property, and is therefore liable not only for what actually comes into [his] hands, but for such property as [he] might have taken possession of by the exercise of diligence, and without any wilful default on [his] part. The guardian should charge [himself] for all the estate of the ward that came to [his] hands at any time, whether inventoried or not, in so far as [he] has not already accounted for the same; and is liable for all estate of [his] ward, that [he] might have collected or reduced to possession by the exercise of proper diligence and prudence.

(Punctuation omitted.) *Head v. Head*, 234 Ga. App. 469, 474 (1) (507 SE2d 214) (1998). Thus, in general, a fiduciary has a duty to account for his ward's assets received prior to the imposition of a guardianship in the initial inventory of the estate.

3. In his third enumeration of error, Graves contends that the superior court erred in finding that he converted the annuity payments of his daughters to his own use.

> A person commits the offense of theft by conversion when, having lawfully obtained funds . . . of another . . . under an agreement or other known legal obligation to make a specified application of such funds or a specified disposition of such property, he knowingly converts the funds . . . to his own use in violation of the agreement or legal obligation.

OCGA § 16-8-4 (a).

Graves argues that he cannot be guilty of knowingly converting funds because he relied on the advice of counsel that the annuity

payments were his to use freely. However, taking Graves at his word, he made a mistake of law, not a mistake of fact, and his ignorance of the law would not excuse his actions. See *Turner v. State*, 210 Ga. App. 303, 304 (2) (436 SE2d 229) (1993). Moreover, Graves had numerous sources of information which alerted him to the fact that the annuity payments were for the benefit of his daughters, not himself.

Finally, Graves is appealing an order requiring him to account for funds as a guardian, not as a defendant in a criminal proceeding.

*Judgments affirmed. Barnes, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED APRIL 12, 1999.

*Troy R. Millikan*, for appellant.
*Carey, Jarrard & Walker, Theodore W. Robinson*, for appellees.