## A99A1988. CSX TRANSPORTATION, INC. v. WEST.

(523 SE2d 63)

BLACKBURN, Presiding Judge.

In its second appearance before this Court in this matter, CSX Transportation, Inc. appeals the jury's award of compensatory damages, punitive damages, and attorney fees to Duane G. West due to CSX's failure to maintain drainage ditches along its railways on West's property. CSX contends that the trial court erred by denying its motion for judgment notwithstanding the verdict, contending that: (1) the award of punitive damages was not supported by clear and convincing evidence of aggravating circumstances; (2) the award of attorney fees was inappropriate because there was neither evidence of bad faith nor evidence sufficient to calculate such fees to a reasonable degree of certainty; (3) the award of compensatory damages was improper because the evidence was insufficient to calculate such damages to a reasonable degree of certainty; and (4) the verdict was not supported by the evidence. For the reasons set forth below, we affirm.

This action originally came before this Court in *West v. CSX Transp.*, 230 Ga. App. 872 (498 SE2d 67) (1998). There, we described the case as follows:

> In this suit alleging continuing nuisance and trespass, Duane West claims his property flooded repeatedly because defendants CSX Transportation and the Polk County Chapter of Georgia Rails Into Trails ("GRITS") failed to maintain drainage control on a railroad right of way that ran through West's property. CSX abandoned the line in 1988 and pulled up the rails in 1991. West's suit claims that when CSX abandoned the right of way, the drainage ditches clogged with sediment and plant growth. Removing the rails, West argues, also channeled water off the right of way and onto his property. In 1995 CSX sold the strip of land to GRITS, a nonprofit recreational group. West claims GRITS is responsible for continuing the nuisance that CSX created. The trial court granted summary judgment to GRITS and CSX. We reverse its judgment on the nuisance claims because the trial court improperly found them barred by West's failure to provide notice to the defendants and by a statute of limitation. We find that a jury should determine whether the failure of CSX and GRITS to maintain the drainage ditches created a continuing nuisance for which these defendants are responsible.

Thereafter, the case went to trial, and the jury determined that

West had been injured by the continuing nuisance which caused flooding and siltation of his property and the resulting death of trees on his land. Although GRITS received a defense verdict, the jury returned a verdict in favor of West and against CSX for $325,000, including $100,000 in punitive damages, $149,000 in compensatory damages, and $76,000 in attorney fees. CSX argued at the trial court level that the verdict against it was improper; however, the trial court denied its motion for j.n.o.v. CSX now appeals this ruling.

1. The "any evidence" standard is applicable to this Court's review of the denial of CSX's motion for j.n.o.v.

> When reviewing a trial court's denial of a motion for j.n.o.v. or new trial, this Court determines if there is any evidence to support the jury's verdict. *Lofty v. Fuller*, 223 Ga. App. 95, 97 (2) (477 SE2d 30) (1996). Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's motions for new trial and j.n.o.v. will not be disturbed.

(Punctuation omitted.) *Dept. of Transp. v. Mikell*, 229 Ga. App. 54-55 (1) (493 SE2d 219) (1997). This standard of review requires CSX "to show that there was no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought." (Punctuation omitted.) *Grange Mut. Cas. Co. v. DeMoonie*, 227 Ga. App. 812 (3) (490 SE2d 451) (1997).

2. CSX contends that the trial court erred by denying its motion for a directed verdict with regard to punitive damages because the evidence was insufficient to support the award.

> Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

OCGA § 51-12-5.1 (b). "[Conscious indifference to consequences] relates to an intentional disregard of the rights of another, knowingly

or wilfully disregarding such rights." (Punctuation omitted.) *John H. Smith, Inc. v. Teveit*, 175 Ga. App. 565, 568 (1) (b) (333 SE2d 856) (1985). "[R]ecovery of punitive damages may be authorized where the circumstances of the tort show an entire want of care and an indifference to consequences. Wilful and intentional misconduct is not essential." *Hoffman v. Wells*, 260 Ga. 588 (1) (397 SE2d 696) (1990).

The evidence shows that CSX was aware of potential flooding problems which would result if the drainage structures along the railroad tracks and ditches across West's property were not maintained. CSX monitored the drainage structures until 1990, performing weekly inspections and maintenance work including improvement of drainage pipes and controlling the growth of vegetation therein. After 1990, however, CSX took no action to ensure drainage control. Then, in August 1992, West began sending letters to CSX with regard to flooding problems, and, in January 1995, West met with representatives of CSX to discuss the problems. Despite this knowledge of West's dilemma, CSX, by its own admission, did nothing to repair the ditches or alleviate the flooding problems. Under these circumstances, which show that CSX had knowledge of West's flooding problems and took no action, the jury was authorized to find that CSX acted with conscious indifference to West's plight, and the trial court properly denied CSX's motion for j.n.o.v. *Teveit*, supra.

CSX's argument that it did not realize that it had a legal duty to maintain the rails and drainage ditches does not change this result. Ignorance of the law is not an excuse. See, e.g., *Graves v. Brown*, 237 Ga. App. 589 (516 SE2d 324) (1999).

3. CSX contends that the trial court erred by denying its motion for j.n.o.v. with regard to the imposition of attorney fees pursuant to OCGA § 13-6-11.

(a) CSX first contends that there was no evidence of bad faith on its part which would support an award of attorney fees. However,

> OCGA § 13-6-11 allows recovery of attorney fees if the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. It is only necessary to the plaintiff's recovery that he show any one of these three conditions exists. Further, an award of attorney fees under OCGA § 13-6-11 is to be affirmed if there is any evidence to support it.

(Citations and punctuation omitted.) *Southern Med. Corp. v. Willis*, 194 Ga. App. 773, 775 (4) (391 SE2d 803) (1990). "Bad faith warranting an award of attorney fees must have arisen out of the transaction on which the cause of action is predicated. It may be found in . . . how defendant acted in his dealing with the plaintiff." (Punctuation

omitted.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 857 (1) (c) (501 SE2d 30) (1998).

In this case, as discussed above, there was evidence that CSX refused to maintain drainage control around its rails despite its knowledge that West's property flooded as a result. Therefore, the jury was authorized to find that CSX acted in bad faith by consciously refusing to take any action to alleviate the damage being caused to West's property, and the trial court did not err by denying CSX's motion for j.n.o.v. for this reason.

(b) CSX also argues that West provided the jury with insufficient evidence to reasonably calculate the amount of attorney fees levied against it.

> Where there is some evidence supporting a finding of bad faith, an award of attorney fees on that basis must be affirmed. . . . Further, contrary to [CSX's] suggestion, the award of attorney fees is not apportioned to only those attorney fees attributable to the claims on which the plaintiff[ ] prevailed. In our view, a party acting in bad faith should pay the full price for losing.

(Punctuation omitted.) *Crocker v. Stevens*, 210 Ga. App. 231, 238 (8) (435 SE2d 690) (1993).

West's attorneys provided detailed time sheets recounting the time that they had spent on matters for him. Based on the testimony of West's counsel, Ann Moceyunas and Steve Astin, their fees totaled approximately $76,680. West also offered evidence that he incurred expenses of litigation totaling approximately $16,938. The jury's verdict of $76,000 was within the range of the evidence of fees and expenses.

Although CSX argues that West should not have been allowed to receive approximately $10,000 in fees relating to the appeal of his original suit, we need not consider this issue since the jury returned a general verdict awarding $76,000. As CSX failed to request an itemized verdict, it cannot be shown at this time that any sums for the original appeal were included in the jury's award.

4. CSX contends that the trial court erred in denying its motion for j.n.o.v. with regard to the compensatory damages levied against it. Specifically, CSX argues that the evidence was insufficient to allow the jury to calculate the amount of compensatory damages to a degree of reasonable certainty.

> As to damages, a jury must be able to calculate the amount of damages from the data furnished and it cannot be placed in a position where an allowance of loss is based on

guesswork. A jury must be able to calculate loss with a reasonable certainty. The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty. It is not necessary, however, that the party on whom the burden thus rests should submit exact figures.

(Citations and punctuation omitted.) *Paul Davis Systems &c. v. Peth*, 201 Ga. App. 734, 735 (1) (412 SE2d 279) (1991).

[T]he rule against the recovery of vague, speculative, or uncertain damages relates more especially to the uncertainty as to cause, rather than uncertainty as to the measure or extent of the damages. Mere difficulty in fixing their exact amount, where proximately flowing from the alleged injury, does not constitute a legal obstacle in the way of their allowance, when the amount of the recovery comes within that authorized with reasonable certainty by the legal evidence submitted.

*Ga. Ports Auth. v. Servac Intl.*, 202 Ga. App. 777, 780 (3) (415 SE2d 516) (1992).

In 1987, West planted 183 acres of pine trees on his property pursuant to a U. S. Government Soil Conservation Plan. West, who inspected his property on an ongoing basis, testified that he first noticed significant flooding on his property and the precipitate death of pine trees in 1992. West further testified that, by 1995, approximately 85-95 percent of his total pine tree loss through 1998 had occurred. In addition, three experts testified that the majority, if not all, of the damage to West's trees took place prior to 1996. West and his forestry expert, Wayne Cauthen, testified that all of the pine trees on 25.6 acres of West's property had been killed. Partial tree loss occurred on 20.4 additional acres. Using a valuation year of 1995, Cauthen testified that the damages for the entire tree loss were: (1) $11,500 for loss of trees on 25.6 acres; (2) $8,000 for reforestation of 25.6 acres; and (3) $2,040 for partial loss on 20.4 acres.

Furthermore, there was evidence that the flooding caused by CSX's failure to maintain the rails resulted in siltation damage to West's property. West testified that, prior to the accumulation of sediment, he had two stock ponds on his property which no longer exist. He also indicated that 75-85 percent of the siltation damage on his property had occurred by June 1995. One expert testified that it would cost approximately $25,813 to remove sedimentation from West's stock pond, and another expert testified that it would cost

$206,464 to remove sediment from West's property so that it could be used for agricultural purposes.

In this case, even if the jury awarded West only 65 percent of his siltation damages alone, the verdict of $149,000 is within the range of the evidence as to damages, and, as a result, the trial court properly denied CSX's motion for j.n.o.v. *Bull Street Church of Christ v. Jensen*, 233 Ga. App. 96, 103 (3) (504 SE2d 1) (1998).

5. Finally, CSX contends that the evidence was insufficient to support the verdict against it. For all of the reasons discussed above, the enumeration of error is meritless.

The fact that GRITS received a defense verdict does not alter this result, as there was some evidence supporting the verdict against CSX. Moreover, although CSX argues that portions of GRITS' closing argument may have inflamed the jury's passions, CSX made no objections and, as such, has waived its right to bring such matter up on appeal. *Whitley v. Gwinnett County*, 221 Ga. App. 18, 24 (10) (470 SE2d 724) (1996).

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED SEPTEMBER 29, 1999.

*Casey, Gilson & Williams, James E. Gilson, Sandra Gray*, for appellant.

*J. Steven Astin, Ann Moceyunas*, for appellee.