## A04A1776. GODINGER SILVER ART COMPANY, LTD. v. OLDE ATLANTA MARKETING, INC.

(604 SE2d 212)

ELLINGTON, Judge.

Olde Atlanta Marketing, Inc. ("OAM") sued Godinger Silver Art Company, Ltd. ("Godinger") for unpaid commissions on sales of Godinger merchandise. After a bench trial, the trial court awarded OAM actual damages of $28,801.01. Pursuant to OCGA § 10-1-702 (b), the trial court also awarded OAM exemplary damages of $57,602.02 and attorney fees equal to 30 percent of actual and exemplary damages. Godinger appeals, contending that the trial court erred (i) in awarding OAM damages based on speculation and guesswork and (ii) in applying Georgia law to the dispute. We disagree and affirm.

On appellate review of a bench trial, the factual "findings shall not be set aside unless clearly erroneous, and due

regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." OCGA § 9-11-52 (a). In bench trials, the judge sits as trier of fact and the court's findings are analogous to a jury's verdict and should not be disturbed if there is any evidence to support them.

(Citation omitted.) *Benson v. McMillan*, 261 Ga. App. 78-79 (581 SE2d 707) (2003).

The evidence shows that Godinger imported crystal and silver products. OAM was Godinger's sales representative in Florida from 1995 through June 1997. Godinger compensated OAM through commissions varying from three to fifteen percent of the net sale price of goods shipped. Under their arrangement, Godinger paid OAM's commission 30 days after the company shipped the product to the customer. Every month, Godinger sent OAM a commission statement accounting for orders shipped and the commission payable to OAM on those orders.

After Godinger terminated OAM as its sales representative, Godinger stopped sending the commission statements, and OAM was unable to reconcile its sales records with Godinger's records. OAM demanded that Godinger provide a detailed accounting and full payment of commissions, but no accounting was provided before OAM filed suit. In October 2000, OAM sued Godinger for $40,153.81 in actual damages based on its own sales records.

Godinger failed to answer the complaint, and the trial court entered a default judgment as to liability in favor of OAM. At the bench trial on the issue of damages, Godinger admitted owing OAM $11,366.58. Upon further questioning by the trial court, it appeared that Godinger had based its calculations on invoices that had not been provided to OAM notwithstanding OAM's request for production of documents. The trial court then continued the trial until OAM's principal, Michael Hutchinson, could review the additional documentation and submit his assessment through an affidavit. Godinger did not object to this procedure. Hutchinson subsequently submitted an affidavit in which he attached a summary of his reconciliation between OAM's records and the documents provided by Godinger, and he averred that based upon detailed analysis and comparison of the two sets of records, Godinger owed OAM $28,801.01 in compensatory damages.

Godinger submitted the affidavit of Steven Block, its Executive Vice-President, in response to the Hutchinson affidavit. Block's affidavit was very precise, identifying where he agreed with Hutchinson and where he did not. In particular, Block disputed some of the commissions, contending that certain goods were never shipped to the customer and other commissions owed had been paid, as shown by

records attached to his affidavit. These attachments do not, however, appear in the appellate record.

1. Godinger contends that OAM failed to carry its burden of proof sufficient to allow the trial court to determine damages with reasonable certainty, as opposed to speculation, conjecture, and guesswork. See *Ryland Group v. Daley*, 245 Ga. App. 496, 504 (7) (537 SE2d 732) (2000) (trial court properly reduced jury award based on speculation as to the future value of a residence). In particular, Godinger contends that OAM's evidence was insufficient because OAM (i) estimated the commission rate applicable to the shipments for which it sought compensation, and (ii) did not show that all sales orders were actually shipped.

Although Hutchinson did estimate commission rates, we conclude these estimates afforded a reasonable basis for the trial court to determine damages. For instance, Hutchinson averred

> [OAM] has to estimate the commission rates due . . . because the exact commission rate is never known until the commission report is sent by [Godinger] and varies item by item. The rates used are conservative estimates based on commissions actually paid on earlier sales to these same customers. The actual amounts owed are larger than the amounts shown below.

In his responsive affidavit, Block never contended that Hutchinson misrepresented amounts due by overstating the commission rates.

We also conclude that the failure of OAM to present evidence as to goods actually shipped did not prevent the trial court from estimating damages to a reasonable certainty. Hutchinson attached records of the purchase orders to his affidavit and averred that the sales were made and that "no evidence has been produced indicating that the purchases did not consummate." At trial, Hutchinson admitted that it was not uncommon for less than all of an order to be shipped, but also testified that failure to ship an order was unusual, and that Godinger worked diligently to fill back orders. Accordingly, there was some evidence that, in the normal course of events, purchase orders would be filled. Further, while Block testified at trial that not all orders were shipped, and that Godinger only owed OAM $11,366.58, the trial court was not bound to accept this testimony. See, e.g., *Dept. of Transp. v. Lewis*, 256 Ga. App. 571, 572 (568 SE2d 849) (2002) (trier of fact not bound to accept evidence supporting lower damage award when other evidence supported award made). Although Block's later filed affidavit refers to attachments purporting to show actual shipping data, there are no attachments to the Block affidavit in the record. Accordingly, we cannot say the trial

court erred in awarding damages in the amount demonstrated by the Hutchinson affidavit. "It is well established that the burden is on the party alleging error to show it affirmatively by the record and that where the proof necessary for determination of the issues on appeal is omitted from the record, the appellate court must assume that the judgment below was correct and affirm." (Citation and punctuation omitted.) *Tahamtan v. Sawnee Elec. Membership Corp.*, 228 Ga. App. 485 (491 SE2d 918) (1997). We are satisfied that the evidence allowed the trial court to determine the amount of damages with reasonable certainty. See *CSX Transp. v. West*, 240 Ga. App. 209, 213 (4) (523 SE2d 63) (1999) (trier of fact must be able to estimate damages with a reasonable certainty, but exact figures need not be submitted); see also *Lord Jeff Knitting Co. v. Lacy*, 195 Ga. App. 287-288 (1) (393 SE2d 55) (1990) (although commissions were payable based on goods shipped and there was a lack of specific shipping documentation, there was evidence sufficient for jury to estimate damages with a reasonable certainty).

2. Godinger claims the trial court improperly applied Georgia law to the dispute. Godinger argues that, because the underlying contract between Godinger and OAM was entered into and performed in Florida, Florida law applied to the breach of contract claim.

> Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is performed will apply.

(Footnote omitted.) *Calhoun v. Cullum's Lumber Mill*, 247 Ga. App. 859, 862 (2) (545 SE2d 41) (2001).

Godinger, however, failed to give timely notice that Florida law applied to this dispute. OCGA § 9-11-43 (c) provides that "[a] party who intends to raise an issue concerning the law of another state or of a foreign country shall give notice in his pleadings or other reasonable written notice." Godinger did not give notice in its pleadings that Florida law should be applied, and it filed its written "Notice of Intention to Raise Florida Law" on November 3, 2003, which was over a year after the trial and only two days before the final order was entered. In such circumstances, Godinger did not give reasonable written notice under OCGA § 9-11-43 (c). See *Samay v. Som*, 213 Ga. App. 812, 814 (2) (a) (446 SE2d 230) (1994) (before a party can raise an issue of foreign law, relevant to any substantive, evidentiary, procedural or jurisdictional issue in a case, reasonable notice must be

given under OCGA § 9-11-43 (c)). Accordingly, the trial court did not err in applying Georgia law.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED AUGUST 10, 2004 —
RECONSIDERATION DISMISSED SEPTEMBER 1, 2004 —

*Decker, Hallman, Barber & Briggs, William W. Briggs*, for appellant.

*James R. Marshall*, for appellee.