**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**June 11, 2026**

# In the Court of Appeals of Georgia

A26A0735. UNLEASHED 2, LLC et al. v. VILLAGE PET CARE,
     LLC.

MCFADDEN, Presiding Judge.

In this appeal, defendants Unleashed 2, LLC and its sole member, Jillian McGee, challenge the trial court's order denying their motion to open default and awarding lost-profit damages and attorney fees to plaintiff Village Pet Care, LLC. Because the trial court did not abuse her discretion in denying the motion to open default, and because there was evidence to support the trial court's award, we affirm.

1. *Procedural history*

In May 2023, Unleashed 2 and McGee entered into a contract to sell the assets of their pet services business to Village Pet Care. The contract imposed obligations with regard to confidentiality, non-competition, and non-solicitation on the

defendants and their "affiliates," a term defined to include McGee's "immediate family members, including, but not limited to, [her] parents, siblings and children[.]" The contract also required Unleashed 2 and McGee to indemnify Village Pet Care for "any breach or non-fulfillment of any covenant, agreement or obligation to be performed by [them]" pursuant to the contract.

On October 10, 2024, Village Pet Care brought an action against Unleashed 2 and McGee. The complaint alleged that McGee had breached provisions of the contract because in August 2023 her adult daughter, a former Unleashed 2 employee, began working for a competitor, notified Unleashed 2 customers of that fact, and disparaged Village Pet Care to those customers. The complaint also alleged that Unleashed 2 and McGee had breached their indemnification obligation. Village Pet Care sought consequential damages for lost profits of at least $196,100 (representing $243,600 in lost profits less a $47,500 indemnification hold back), pre- and post-judgment interest, and attorney fees and costs of litigation.

Unleashed 2 and McGee were served with the complaint on November 2, 2024. On January 13, 2025, Village Pet Care filed a motion for entry of a default judgment, asserting that Unleashed 2 and McGee were in default because they had failed to

answer or file other defensive pleadings and they had not moved to open default. Village Pet Care sought entry of a default judgment on liability and asked the trial court to schedule a hearing on damages.

The trial court granted default judgment against Unleashed 2 on February 19, 2025, and against McGee on February 28, 2025, and held that Village Pet Care was entitled to an award of lost profits and reasonable attorney fees and expenses of litigation in an amount to be determined after a hearing. The trial court set that hearing for April 29, 2025.

On April 25, 2025, Unleashed 2 and McGee filed a motion to open default, arguing that this was a proper case for opening default because the contractual obligations they were alleged to have breached were unenforceable or void. After a hearing, the trial court entered an order denying the motion to open default and awarding Village Pet Care $194,424.00 in lost profits and $60,887.05 in attorney fees and expenses of litigation. Unleashed 2 and McGee appeal.

2. *Motion to open default*

Unleashed 2 and McGee argue that the trial court erred in denying their motion to open default. We disagree.

When Unleashed 2 and McGee moved to open default, the trial court had not entered a final judgment in this case, but only a default judgment on liability. Consequently, OCGA § 9-11-55(b) governed the resolution of the defendants' motion. See *Troika Ent. v. Mendez*, 360 Ga. App. 904, 905-06(2) (862 SE2d 572) (2021) (holding that OCGA § 9-11-55(b) applies when a default judgment is not a final judgment). That Code section provides:

> At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

OCGA § 9-11-55(b). It establishes four conditions precedent for opening default. *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 547 (629 SE2d 260) (2006). Those "four conditions are: (1) showing made under oath, (2) offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense." *Stewart v. Turner*, 229 Ga. App. 119, 121(2) (493 SE2d 251) (1997). Once

4

those conditions are met, "the statute establishes three distinct grounds upon which default may be opened — providential cause, excusable neglect, or proper case." *Bowen v. Savoy*, 308 Ga. 204, 206 (839 SE2d 546) (2020).

For purposes of our analysis, we will assume that Unleashed 2 and McGee satisfied the four conditions precedent and focus on whether they demonstrated one of the three grounds for opening default. The only ground they argued in support of their motion was proper case, which "permits the reaching out to take in every conceivable case where injustice might result if the default were not opened." *Bowen*, 308 Ga. at 208 (quotation marks omitted). "[T]he proper case inquiry is intensely fact specific[.]" Id. at 208. Among other things, the trial court may consider "whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed." *Kittrell v. Dream Builder Inv.*, 354 Ga. App. 687, 688(1) (840 SE2d 461) (2020) (quotation marks omitted).

"Our review of the proper-case ruling is highly deferential, and we will reverse only if the trial court manifestly abused her discretion." *Troika Ent.*, 360 Ga. App. at 909(4)(b) (citation modified). The trial court did not explain her reasons for denying the motion to open default, but as Village Pet Care pointed out in its arguments

opposing the motion, the record shows that Unleashed 2 and McGee waited several months after learning of the default before they moved to open it. As detailed above, Village Pet Care sought a default judgment in January 2025 and the trial court granted a default judgment on liability in February 2025, but Unleashed 2 and McGee did not seek to open the default until late April 2025, just days before the scheduled hearing on damages in the case. Given these circumstances, we cannot say that the trial court manifestly abused her discretion in denying the motion to open default on proper-case grounds. See *Rainbow Real Investors v. Red Oak Village Condo. Ass'n*, 376 Ga. App. 458, 468(2)(b) (919 SE2d 487) (2025) (finding no manifest abuse of discretion in denying a motion to open default on proper-case grounds where the defendant did not act promptly to open the default after learning of it); *Troika Ent.*, 360 Ga. App. at 909(4)(b) (same).

3. *Lost profits*

After receiving evidence at a hearing, the trial court awarded Village Pet Care $194,424.00 in lost profits. Unleashed 2 and McGee challenge the sufficiency of the evidence supporting this award. We review this claim of error under the "any evidence" standard, meaning that we "will not disturb the findings of the trial court

if there is any evidence to sustain them." *Dep't of Transp. v. Arapaho Constr.*, 180 Ga. App. 341, 344(3) (349 SE2d 196) (1986).

Lost profits, a form of consequential damages, see OCGA § 13-6-8, "are the measure of what the plaintiff lost as a result of the defendant's conduct." *Bearoff v. Craton*, 350 Ga. App. 826, 835(2) (830 SE2d 362) (2019). They must be proved with great specificity through

> information or data sufficient to enable the trier of fact to estimate the amount of the loss with reasonable certainty. This information or data must include evidence showing that the business claiming lost profits had a proven track record of profitability. The plaintiff must also show the expected profit for the relevant time period — i.e., they are required to show the business's projected revenues, as well as its projected expenses, for that time frame.

Id. at 835-36(2) (citation modified). In addition, a plaintiff seeking lost profits must take "appropriate action to mitigate the loss[.]" *Ultra Group of Cos. v. S&A 1488 Mgmt.*, 357 Ga. App. 757, 761(2) (849 SE2d 531) (2020).

Village Pet Care presented documentary and testimonial evidence to the trial court that met these requirements. Its former chief financial officer ("CFO"), who had experience conducting lost profit analyses, testified at length to the lost profit

analysis he performed with regard to the pet services facility that Village Pet Care acquired from Unleashed 2 and McGee. He explained how he conducted that analysis:

> I measured the historical performance of the business. I referred back to the underwriting that our acquisition team did. I compared that financial information to the results that … an independent accounting firm had prepared to make sure that all of the information I had matched up with the external evidence that we had gathered during the acquisition. And then I compared that historical information to the recent run rate, financial revenue and losses primarily, that occurred during that roughly 12-month period from the time that we bought the assets to the date that I did the analysis.

(Punctuation omitted.) He also explained the details of his analysis, using spreadsheets that were admitted into evidence.

Among other things, the former CFO testified that the facility had been profitable before the May 2023 acquisition, that it remained profitable in May, June, and July 2023, but that beginning in August 2023 and continuing through March 2024 its operated at a loss. He testified that he attributed that loss to the breach of contract that occurred in August 2023. He testified about the projected revenues and expenses he had used in his lost profits analysis and explained how he reached his ultimate conclusion that Village Pet Care lost $243,000 after the acquisition, which

represented the "net present value of the future profits ... that Village Pet ... did not or would not receive because of the breach of the contract."

The current CFO of Village Pet Care, who assumed that role in November 2024, testified that he also conducted a lost profits analysis with regard to the facility that Village Pet Care acquired from Unleashed 2 and McGee. He testified that he began with the analysis conducted by the former CFO and updated it with more recent actual financial data. Like the former CFO, the current CFO testified that prior to the acquisition and after the acquisition, but before the breach, the facility had been profitable, but that after the breach it "very quickly [became] an unprofitable location." He explained in detail the figures that demonstrated the loss in profitability, referring to a spreadsheet that was admitted into evidence, and he attributed that loss to the breach of contract. He also explained his ultimate conclusion that Village Pet Care had lost profits of $241,924.

Village Pet Care also introduced evidence of its efforts to mitigate the losses at the facility by hiring other employees to perform the pet grooming functions that McGee previously had performed.

We are not persuaded by the argument of Unleashed 2 and McGee that this evidence was too speculative to show lost profits. In support of that argument, they analogize this case to our decisions in *Coffee Butler Serv. v. Sacha*, 208 Ga. App. 4, 6-7(2) (430 SE2d 149) (1993), and *Claxton Poultry Co. v. City of Claxton*, 155 Ga. App. 308, 313-14(4) (271 SE2d 227) (1980), but both decisions are distinguishable.

In *Coffee Butler Serv.*, we affirmed a grant of summary judgment to the defendant because the plaintiff had pointed to no evidence supporting a causal connection between the defendant's alleged breach of contract and cancelled business accounts, on which the plaintiff based its claim for lost profits. *Coffee Butler Serv.*, 208 Ga. App. at 5-7(2). In doing so, we noted that the defendant, a former employee of the plaintiff who was accused of failing to properly service the accounts, had submitted an affidavit averring that he had "not advise[d] any of those accounts to cease doing business with Coffee Butler [or told] any of those accounts anything negative about Coffee Butler's services or products." Id. at 6(2). And the plaintiff did not point to any evidence creating a genuine issue of material fact on that point; instead, its witnesses did not have "any information on why any of the accounts had left Coffee Butler[.]" Id. at 7(2). Here, in contrast, Unleashed 2 and McGee have admitted, by

10

virtue of the default judgment, that in August 2023 — the same month that the former CFO testified Village Pet Care began to experience losses at the facility — McGee's daughter informed customers that she had begun working for a competitor and disparaged Village Pet Care's services to those customers. And both the current and former CFOs tied the losses to the breach of contract.

In *Claxton Poultry Co.*, 155 Ga. App. at 313-14(4), we affirmed a trial court's decision to exclude an accountant's lost profit testimony as too speculative because the witness was not familiar with underlying market factors that could affect his estimates. But unlike *Claxton Poultry Co.*, this case does not concern the admissibility of evidence or the trial court's exercise of discretion in that regard. Instead, Unleashed 2 and McGee challenge the strength of the evidence. It was for the trial court as factfinder, rather than this court, to assess that evidence and decide whether the witnesses' testimony supported their lost-profits analyses.

In summary, the amount that the trial court awarded in lost-profit damages, $194,424, reflects the $241,924 in lost profits calculated by Village Pet Care's current CEO minus the $47,500 indemnification hold back described in the complaint. The testimony of Village Pet Care's current and former CFOs, along with the supporting

spreadsheets, permitted the trial court to determine this amount "with reasonable certainty." *Bearoff*, 350 Ga. App. at 835(2). The evidence was sufficient to support the lost-profit award. See *Aon Risk Servs. v. Commercial & Military Systems Co.*, 270 Ga. App. 510, 513(3)(b) (607 SE2d 157) (2004) (holding that a trial court did not err in denying a directed verdict as to lost profits where there is "some evidence of lost profits which could have been traced" to the defendant's breach of contract); *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 143(2) (460 SE2d 854) (1995) (holding that documentary and testimonial evidence of a business's monthly revenues and expenses and the calculation of lost profits supported jury award of lost profits under the "any evidence" standard).

4. *Attorney fees and costs of litigation*

Unleashed 2 and McGee challenge the award of attorney fees and costs of litigation. Their argument rests solely on the trial court having erred in denying their motion to open default. Because we affirm the denial of that motion, this claim of error has no merit.

*Judgment affirmed. Watkins and Padgett, JJ., concur.*