A06A2410. FOWLER et al. v. ATLANTA NAPP DEADY, INC. et al.
(641 SE2d 573)

JOHNSON, Presiding Judge.

Atlanta Napp Deady, Inc., Miami Napp Deady, Inc., and Hill Street Warehouse ("plaintiffs") sued Donald Fowler and Rosemary Byers ("defendants") for accounting malpractice, negligence, fraud, breach of fiduciary duty, attorney fees, and an accounting of their financial records. The trial court granted the plaintiffs' motion to compel discovery from the defendants. When the defendants failed to

fully comply with the order compelling discovery, the trial court granted the plaintiffs' motion for sanctions and struck their answer and counterclaim. Following a jury trial on the amount of the plaintiffs' damages, the trial court entered judgment in favor of the plaintiffs totaling $1,198,610.12. The defendants appeal, asserting that the trial court erred by: (1) granting the plaintiffs' motion for sanctions and striking their answers; (2) instructing the jury that the defendants were liable for fraud without explaining that their liability resulted from a procedural default; (3) excluding their alleged evidence regarding the amount and cause of damages; and (4) allowing Miami Napp Deady, Inc. to remain a party plaintiff when it was administratively dissolved at the time the lawsuit was filed.

1. The defendants assert that the trial court erred by granting the motion for sanctions because the trial court's finding that they wilfully refused to comply with the motion to compel "is not supported by the record and is a clear abuse of discretion."

The record shows that the plaintiffs hired the defendants to prepare their payroll and file tax documents. After receiving penalty notices from the Internal Revenue Service ("IRS"), the plaintiffs sought to obtain their tax and payroll documents from the defendants, but were unsuccessful. As a result, they filed suit against the defendants and, in February 2005, served a request for production of documents seeking copies of the important tax forms they had been requesting for over a year. In their request, the plaintiffs defined the term "document" to include "computer printouts [and] information stored on computers but of which no printout presently exists."

The defendants obtained a three-week extension of time to answer the discovery requests and served their written responses on April 12, 2005. They produced no documents, promising instead that they "will produce all documents in [their] custody or possession which exist and are responsive . . . which are relevant to this litigation and not privileged."

On May 5, 2005, plaintiffs' counsel wrote to defense counsel and requested immediate production of the promised documents. As of May 19, 2005, plaintiffs' counsel had received no response from defense counsel, despite leaving multiple messages. The record shows that defense counsel obtained five boxes of documents from his clients on May 24, 2005 and informed plaintiffs' counsel that he would produce the requested documents after he had an opportunity to review the contents of the boxes provided by his clients.

On June 14, 2005, the defendants produced seven boxes of documents, but the documents produced did not include the unfiled tax returns and forms. On June 20, 2005, defense counsel admitted that, after talking with his clients, their response was still not

complete. He promised "to see what I can do about pulling the rest of the materials together in the near future."

Three months later, on September 15, 2005, the plaintiffs filed a motion to compel because the defendants had failed to supplement their responses as they had promised. The defendants filed a response on October 17, 2005 in which they promised, once again, to produce relevant documents. The trial court granted the motion to compel on November 17, 2005 and ordered the defendants to respond to the request for production of documents by December 7, 2005. Defendants produced additional documents on November 17, 2005, November 29, 2005 and December 7, 2005.

After receiving these documents, plaintiffs' counsel took the deposition of defendant Byers on December 13, 2005. Byers admitted in her deposition that she had not produced numerous categories of documents and promised once again to produce them to the plaintiffs. Excuses offered during her deposition for her failure to previously produce these documents included that she thought she did not have to produce documents she claims to have given the plaintiffs before the suit was filed, that she was out of town taking care of her sick mother, that she did not have the time because of her and her mother's poor health, and that she did not realize the omitted documents had been requested. When defense counsel terminated the deposition until the documents could be produced, Byers announced "that this is going to take me awhile."

On December 22, 2005, the plaintiffs moved for sanctions based on the defendants' failure to fully comply with the trial court's order compelling discovery. On January 20, 2006, the defendants filed a two-sentence response to the motion for sanctions which stated: "Defendants have supplied records and documents as requested which they have in their possession. All documents have been supplied by Defendants within the limitation of their health." The defendants produced no additional documents as promised and asked for oral argument.

On January 25, 2006, the case was scheduled for a jury trial on February 27, 2006 and the defendants still had not produced the promised documents. On February 9, 2006, the trial court scheduled a hearing for February 21, 2006 on the motion for sanctions, and the defendants had still not produced any additional documents. On February 17, 2006, ten days before the scheduled trial date, the defendants produced a box of "recreated documents from their computer" for the first time. The defendants claimed that health issues adversely impacted their ability to produce all of the requested documents and submitted affidavits and medical records to support their position.

On February 21, 2006, the trial court held a hearing on the motion for sanctions. After reviewing the defendants' affidavits and medical records, the trial court rejected their excuses because the defendants had appeared for depositions that lasted several hours on December 7, 2005 and the medical records showed no medical problem for defendant Byers after September 2005. The trial court also noted that the defendants were professional accountants who were in the business of making and keeping records and rejected their excuse that the delay in producing the re-created documents stemmed, in part, from outdated software. The trial court concluded, "They've blatantly disregarded the court's order. And there's no excuse for it. I just don't see any excuse." Based on the defendants' "conscious and intentional failure to act," the trial court granted the plaintiffs' motion to strike the defendants' answer and counterclaim and ordered that a trial on damages be held.

Almost two months after the trial court struck their answers, the defendants produced even more documents, including IRS transcripts, correspondence, and accounting documents. In an affidavit filed on the same day, Byers offered no explanation for the delay in producing these documents. Instead, she claimed that none of her omissions in the production of documents was "conscious, intentional, or wilful" and that she acted, "at all times, in good faith."

We find no merit in the defendants' claim that the trial court's finding of wilfulness is not supported by the record. "A showing of actual wilfulness is not required, only a conscious or intentional failure to act."[1] "A conscious or intentional failure to act is in fact wilful."[2] And, a trial court determining whether a party's failure to comply with an order compelling discovery is wilful should consider the entire period of time beginning with the service of discovery and ending with service of the requested discovery.[3] Finally, in discovery matters, "[t]he trial court is the trier of fact and its finding of wilfulness from the evidence presented will not be reversed where there is any evidence to support it."[4]

In this case, the record supports the trial court's finding of wilfulness. Throughout the course of discovery, the defendants made repeated empty promises to fully respond to the plaintiffs' request for production of documents. They did not fully respond, however, until

---

[1] (Citation and footnote omitted.) *Mableton Parkway CVS v. Salter*, 254 Ga. App. 162, 163 (1) (561 SE2d 478) (2002).

[2] (Citation and punctuation omitted.) *Resource Network Intl. v. Ritz-Carlton Hotel Co.*, 232 Ga. App. 242 (1) (501 SE2d 573) (1998).

[3] Id.

[4] (Citation and punctuation omitted.) *Oliff v. Smith*, 214 Ga. App. 358, 359 (447 SE2d 707) (1994).

after the court imposed the sanction of dismissal, and long after the deadline in the order compelling discovery had passed. The record also supports the trial court's conclusion that the defendants' medical history did not excuse their failure to comply with its order compelling discovery.

We find no merit in the defendants' argument that the trial court should not have imposed the extreme sanction of dismissal because they did not totally fail to produce documents. In *State Farm &c. Ins. Co. v. Health Horizons*,[5] a whole court decision, we rejected a similar argument, noting that "[i]f that were the law, then a defendant could endlessly respond to a motion to compel by partially complying while asserting various forms of privilege or unavailability or difficulty of production in order to 'stay in the game.' "[6]

The trial court did not abuse its discretion when it sanctioned the defendants by striking their answer and counterclaim.

2. The defendants assert the trial "court erred by allowing instruction and mention at trial that [they] were liable for fraud as a matter of law without allowing testimony or other explanation to the jury as to the nature of the procedural default." "It is well established that jury instructions must be read and considered as a whole in determining whether the charge contained error. Moreover, a trial court does not err in refusing to give a requested charge that is not legally accurate and adjusted to the evidence."[7] The record shows that the trial court instructed the jury, in relevant part:

[n]ow members of the panel, as I have indicated, and I think the attorneys have, liability has been established in this case. And the issue remaining for you is the amount of damages, if any. . . . Now as to the issue of damages, even though the court has determined liability on counts in the plaintiffs' verified complaint, they still have the burden of proving the damages that they are asking from the jury. . . . Now, members of the panel, the court has determined liability, and the plaintiffs have decided to seek damages on the issue of fraud, breach of fiduciary duty of Defendant Fowler, breach of fiduciary duty by Defendant Byers, and attorney's fees. So that means, members of the panel, you don't have to go out and discuss liability or fault, because that has been determined by the court, but, as I said, the remaining issue

---

[5] 264 Ga. App. 443 (590 SE2d 798) (2003).

[6] Id. at 447 (1).

[7] (Citation omitted.) *Wadkins v. Smallwood*, 243 Ga. App. 134, 139 (5) (530 SE2d 498) (2000).

of damages is for you to decide based on my legal instructions and based on the evidence presented in that regard. . . .

After reviewing the charge given by the court, we find that the whole charge covered fairly all issues and contentions of both sides. We further find that the trial court did not err by refusing to inform the jury of the reasons why it found the defendants liable as a matter of law. It has long been established that

> a defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery.[8]

Instructing the jury that the trial court found the defendants liable as a matter of law due to "a procedural default" would be tantamount to allowing the defendants to contest liability. It would also open the door for defendants to argue that they were not really liable for fraud, but were instead being punished because they failed to comply with a court order. The trial court properly refused to give an instruction contrary to Georgia law.

3. In related enumerations of error, the defendants assert the trial court erred by excluding evidence disputing the amount and cause of the plaintiffs' damages. We disagree. A defendant in default may not introduce evidence that disputes liability even though it "may also go to the assessment of damages."[9] As the documents defendants sought to admit disputed liability by placing blame on the IRS or the plaintiffs for the plaintiffs' unpaid taxes, we find the trial court did not abuse its discretion by excluding them from evidence.

4. We find no merit in the defendants' claim that the trial court erred "when it allowed" plaintiff Miami Napp Deady, Inc. to remain a party because it had been administratively dissolved at the time it filed suit against them. First, the defendants never moved to dismiss Miami Napp Deady, Inc. as a party plaintiff and thus, there was no ruling by the trial court allowing Miami Napp Deady, Inc. to remain a party plaintiff. The only evidence in the record on this issue relates to the trial court's grant of the plaintiffs' motion in limine to preclude the defendants from admitting evidence of Miami Napp Deady, Inc.'s

---

[8] (Citation and punctuation omitted.) *Cohran v. Carlin*, 254 Ga. 580, 585 (3) (331 SE2d 523) (1985).

[9] (Citations and punctuation omitted.) *Holland v. Tennyson*, 201 Ga. App. 125 (410 SE2d 447) (1991). See also *Moss v. Wilkie*, 210 Ga. App. 688, 689 (2) (437 SE2d 367) (1993).

administrative dissolution and reinstatement. "Appellate courts exist to review asserted error but where the defendant makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review."[10]

Second, even if this issue were somehow preserved by the trial court's ruling on the motion in limine, the trial court concluded properly that the Florida corporation's reinstatement related back to the time of its dissolution nunc pro tunc.[11]

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 29, 2007.

*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Molly J. Prodgers, Richard E. Thomasson*, for appellants.

*Fellows, Johnson & La Briola, Stephen T. La Briola, Eugenia W. Iredale*, for appellees.

---

[10] *Sanders v. State*, 179 Ga. App. 168, 169 (2) (345 SE2d 677) (1986).

[11] See OCGA § 9-11-17 (b) (capacity of corporation to bring action determined by law under which it was organized); *Allied Roofing Indus. v. Venegas*, 862 S2d 6, 8 (Fla. Ct. App. 2003) (reinstatement of administratively dissolved Florida corporation relates back to date of dissolution and it is as if dissolution had never occurred).