308 Ga. 204
FINAL COPY

S19G0278. BOWEN et al. v. SAVOY et al.

BENHAM, Justice.[1]

We granted certiorari in this case to address the following question: To show a proper case for opening default under OCGA § 9-11-55 (b), must the defendant provide a reasonable explanation for the failure to file a timely answer? For the reasons that follow, we answer that question in the negative and therefore reverse the judgment of the Court of Appeals in *Bowen v. Savoy*, 347 Ga. App. XXV (A18A1001) (Sept. 25, 2018) (unpublished) and remand this case for consideration consistent with this decision.

In 2016, Priscilla Savoy, individually and as executor of her mother's estate, filed suit against her sisters Eleanor Bowen and Margaret Innocenti[2] (collectively "defendants"), contending that

---

[1] I am privileged and honored to have served the people of the State of Georgia for more than 35 years on both this Court and the Court of Appeals.

[2] A third sister, Suzanne Douglas, was also named as a defendant; however, the complaint against Douglas was dismissed for lack of personal jurisdiction.

they colluded to appropriate funds from their mother's estate for their own use. The defendants were served with the summons and complaint on June 20 and 22, 2016. On July 20, 2016, the defendants filed in the trial court a motion to dismiss the complaint for lack of personal jurisdiction, which was supported by a sworn affidavit executed by Bowen denying the factual allegations raised in the complaint. When the defendants did not answer the complaint within 30 days of service, as required by OCGA § 9-11-12 (a), the case "automatically [became] in default," OCGA § 9-11-55 (a).

Litigation continued between the parties for another six months until, on February 15, 2017, the trial court denied the defendants' motion to dismiss. Six days later, on February 21, the defendants filed an untimely answer. On February 27, Savoy filed a motion for entry of default judgment. That same day, the defendants filed a motion to set aside the default, arguing, in relevant part, that a proper case had been made for opening the default, in support of which their counsel filed a sworn affidavit in which he accepted responsibility for the defendants' failure to file a timely answer.

2

Counsel explained that, based upon his good faith (mis)understanding that the Civil Practice Act "allow[s] for Defendants who contend the [trial court] lacks jurisdiction the option to file a Motion to Dismiss as opposed to an answer," he delayed filing the defendants' answer until the trial court ruled on the motion to dismiss.

The trial court granted Savoy's motion for default judgment on August 23 and concomitantly issued an order denying the defendants' motion to set aside the default. In denying the motion to set aside the default, the trial court concluded that the defendants, in seeking to establish a proper case to open the default, had failed to provide a "reasonable explanation" for their failure to file a timely answer. Thereafter, the trial court granted the defendants' request for a certificate of immediate review. The Court of Appeals granted the defendants' application for interlocutory review but ultimately affirmed the judgment of the trial court and its conclusion that some reasonable explanation was required to open a default under the "proper case" ground. See OCGA § 9-11-55 (b). It is that conclusion

3

we address today, and, in doing so, we must consider the proper construction of OCGA § 9-11-55 (b).

"As in all appeals involving the construction of statutes, our review is conducted under a de novo standard." *Hankla v. Postell*, 293 Ga. 692, 693 (749 SE2d 726) (2013). So we turn to the statutory language, mindful that, "[w]hen interpreting a statute, we must give the text its plain and ordinary meaning, view it in the context in which it appears, and read it in its most natural and reasonable way." *State v. Coleman*, 306 Ga. 529, 530 (832 SE2d 389) (2019).

The Civil Practice Act provides a remedy for those defendants who, by failing to answer a complaint within 30 days of service, find themselves in default. See OCGA § 9-11-55 (the "Default Judgment Statute"). A default may be opened "as a matter of right within 15 days of the day of default." OCGA § 9-11-55 (a). In anticipation of those situations which might warrant the opening of default beyond that timeframe, the Default Judgment Statute also provides, in pertinent part:

> At any time before final judgment, the court, in its

4

discretion, upon payment of costs, may allow the default to be opened [1] for *providential cause* preventing the filing of required pleadings or [2] for *excusable neglect* or [3] where the judge, from all the facts, shall determine that a *proper case* has been made for the default to be opened, on terms to be fixed by the court. . . .

(Emphasis supplied.) OCGA § 9-11-55 (b). From the use of the disjunctive "or," it is clear that the statute establishes three distinct grounds upon which default may be opened — providential cause, excusable neglect, or proper case. See *Karan, Inc. v. Auto-Owners Ins. Co.*, 280 Ga. 545, 547 (629 SE2d 260) (2006).[3]

Although our present inquiry is focused on the proper case ground, an understanding of the two other grounds — providential cause and excusable neglect — is informative because we must

---

[3] OCGA § 9-11-55 (b) further establishes four conditions with which a defendant must comply in order for a default to be opened: "In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial." See *Karan*, 280 Ga. at 547 ("Compliance with the four conditions is a condition precedent and once met the question of whether to open the default on one of the three grounds rests within the sound discretion of the trial court.").

In considering the defendants' motion to open default, the trial court alternatively held that the defendants had failed to establish a meritorious defense. The Court of Appeals did not consider this holding, which may be addressed on remand.

"avoid a construction that makes some language mere surplusage," *GeorgiaCarry.Org, Inc. v. Atlanta Botanical Garden, Inc.*, 306 Ga. 829, 841 (3) (834 SE2d 27) (2019), which could occur were we to ascribe the same meaning to two distinct phrases. Neither the Default Judgment Statute nor the Code defines providential cause, excusable neglect, or proper case, so "we must examine the meaning of those words in their broader context, including other legal authorities which may inform our understanding of the phrase's meaning in this statute." Id. at 834.

The phrase "providential cause" is a term of art, and its usage is confined almost exclusively to this state. By 1895,[4] the phrase had

---

[4] The Default Judgment Statute was enacted in 1895 and has remained largely unaltered since that time. See Ga. Code of 1895, § 5072. The 1895 statute provided as follows:

> At the trial term the judge in his discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of a plea, or for excusable neglect, or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead *instanter*, and announce ready to proceed with the trial.

The statute's only material revision extended the trial court's discretion to

been part of Georgia law for the better part of the nineteenth century,[5] and its meaning was well settled by this Court. "When the legislature uses such a term of art, it presumably adopts the longstanding interpretation of that term unless it says otherwise." *Hourin v. State*, 301 Ga. 835, 839 (2) (a) (804 SE2d 388) (2017). Our precedent indicates that providential cause generally encompasses events over which a party or his attorney had no control, including the illness of a party, see *Phillips v. Taber*, 83 Ga. 565, 571-572 (10 SE 270) (1889), or his lead counsel, *Printup v. Mitchell*, 19 Ga. 586, 588 (1856); the death of a party, see *Dougherty v. Fogle*, 48 Ga. 615, 618 (1873); the absence of counsel due to military service, see *Dalton City Co. v. Dalton Mfg. Co.*, 33 Ga. 243, 249 (1862); and acts of God, see *Carhart & Ross & Co. v. Jno. B. Ross & Co.*, 15 Ga. 186, 188

open a default beyond the trial term to "any time before final judgment." See Ga. L. 1946, pp. 761, 778.

[5] An 1835 amendment to the Constitution of 1798 provided for the formation of and established certain procedural rules for this Court. In pertinent part, the amendment provided that where "the plaintiff in error in any such case shall not be prepared at such first term of said court after error brought to prosecute the same, unless precluded by some *providential cause* from such prosecution, it shall be stricken from the docket, and the judgment below shall stand affirmed." (Emphasis supplied.) Ga. Const. of 1798, Amend. X (adopted Dec. 22, 1835).

(1854) ("Will not even the act of God, sickness, high-waters, or any other Providential cause, protect [a garnishee] from this [financial penalty]?"). Providential cause generally does not embrace those circumstances that could have been avoided by the defaulting party's exercise of due diligence. See *Ex parte Bradley*, 63 Ga. 566, 567-568 (1879); *Smith v. Brand*, 44 Ga. 588, 591 (1872).

The term "excusable neglect" is likewise a term of art,[6] which Black's Law Dictionary dates to 1855. See Black's Law Dictionary (11th ed. 2019). In one of this Court's earliest decisions to construe the predecessor to the Default Judgment Statute, *Brucker v. O'Connor*, 115 Ga. 95 (41 SE 245) (1902), we addressed the excusable neglect ground and defined its proper scope: "'Excusable neglect' does not mean gross negligence. It does not mean a willful disregard of the process of the court, but refers to cases where there

---

[6] This term does not find its roots in this state. The phrase was apparently borrowed from similar statutes concerning the opening of defaults in force in other states during the nineteenth century. See, e.g., *Sullivan v. Shell*, 15 SE 722, 723 (S.C. 1892) (explaining that state law permits a trial court to relieve a party from judgment "taken against him 'through his mistake, inadvertence, surprise, or excusable neglect'"); *Powell v. Weith*, 68 N.C. 342, 343 (1873); *Harlan v. Smith*, 6 Cal. 173, 174 (1856).

is a reasonable excuse for failing to answer." (Emphasis omitted.) *Brucker*, 115 Ga. at 96. This Court's subsequent decisions concerning the excusable neglect ground have remained consistent with this definition. See, e.g., *In re Turk*, 267 Ga. 30, 30-31 (1) (471 SE2d 842) (1996) (declining to allow attorney subject to disciplinary proceeding to open default under excusable neglect ground where attorney's stated reasons for his failure to answer were "personal problems; numerous office moves resulting in disruption of his mail service; improper calendaring of the response date; misunderstanding of the bar rules; and his preoccupation with a prior disciplinary proceeding"); *Ga. Farm Bldgs., Inc. v. Willard*, 170 Ga. App. 327, 330 (4) (317 SE2d 229) (1984) ("The term 'excusable neglect,' as used in this code section, refers to a 'reasonable excuse' for failing to answer, as distinguished from willful disregard of the process of the court.").

Turning to the final ground and the one at issue here, this Court has explained that the proper case ground is the broadest of the three, see *Cardinal Robotics v. Moody*, 287 Ga. 18, 21 (694 SE2d

9

346) (2010), and permits "the reaching out to take in every conceivable case where injustice might result if the default were not opened," *Axelroad v. Preston*, 232 Ga. 836, 837 (209 SE2d 178) (1974). In *BellSouth Telecomms. v. Future Comms.*, 293 Ga. App. 247, 250 (2) (666 SE2d 699) (2008), however, the Court of Appeals, while recognizing the expansive scope of the proper case ground, held that a default may be opened under that ground "only where a reasonable explanation for the failure to timely answer exists." In reaching this conclusion, the *BellSouth* court relied on a line of cases seemingly derived from a misreading of *Brucker*, where this Court said that "a judge [has] no authority to open a default . . . for reasons which fall short of a reasonable excuse for the negligent failure to answer." *Brucker*, 115 Ga. at 96. However, considered in its original context and in conjunction with the statutory language, *Brucker*'s requirement of a "reasonable excuse" is dispositive only in the excusable neglect context. See *Houston v. Lowes of Savannah, Inc.*, 235 Ga. 201, 202 n.2 (219 SE2d 115) (1975). *Brucker*'s decontextualized language has unfortunately resulted in the

emergence of a tangle of competing, and frequently conflicting, standards for the opening of default under the proper case ground, both in *BellSouth* and in earlier decisions of the Court of Appeals.

By the Default Judgment Statute's plain language, the trial court is instructed, when determining whether a proper case exists for the opening of default, to consider "*all* the facts." (Emphasis supplied.) OCGA § 9-11-55 (b). The statute omits reference to any specific fact that a trial court must consider. Requiring a "reasonable excuse" to open default under the proper case ground is thus unsupported by the statutory language and, further, would render the proper case ground "mere surplusage" by subsuming that ground into the excusable neglect ground.

Indeed, the proper case inquiry is intensely fact-specific, though case law can offer some guidance. See *Nelson v. Bd. of Regents of the Univ. Sys. of Ga.*, 307 Ga. App. 220, 225 (1) (704 SE2d 868) (2010) (recognizing *BellSouth*'s "less than precise" holding and instructing proper case "litigants to keep in mind that these 'default cases' often turn on a variety of factors (e.g., the trial court's

discretionary judgment, factual subtleties), and that no two are alike, and each must be judged on its own merits" (citation and punctuation omitted)). As with the other two grounds, our prior proper case decisions generally reflect that the defendant's failure to file a timely answer must not have resulted from willful or gross negligence. See *Muscogee Realty Dev. Corp. v. Jefferson Co.*, 252 Ga. 400, 402 (314 SE2d 199) (1984); *Copeland v. Carter*, 247 Ga. 542, 543 (1) (277 SE2d 500) (1981). Whether the plaintiff will be harmed or prejudiced by opening the default is likewise a universally pertinent consideration when the proper case ground is pled. See *Copeland*, 247 Ga. at 543; *Axelroad*, 232 Ga. at 838. See also *Strader v. Palladian Enterprises*, 312 Ga. App. 646, 650 (719 SE2d 541) (2011) (no abuse of discretion in opening default on proper case ground where defendant, within two days of learning of the default, "paid costs, moved to continue the case, and filed notice of its intent to move to open the default, which it did twelve days later," and plaintiff "presented no evidence of prejudice suffered by the opening of the default"); *Shortnacy v. N. Atlanta Internal Med., P.C.*, 252 Ga.

12

App. 321, 324 (1) (556 SE2d 209) (2001) ("[P]laintiffs have demonstrated no prejudice to their case by the opening of default, particularly since they waited 11 months after filing proof of service to move for entry of default judgment."). Finally, a trial court should bear in mind that this statute "conveys very ample powers" to open defaults, *Axelroad*, 232 Ga. at 837, and "[i]n keeping with the policy of deciding cases on their merits, this provision should be liberally applied," *Exxon Corp. v. Thomason*, 269 Ga. 761, 762 (2) (504 SE2d 676) (1998).

Because we conclude that consideration of a reasonable excuse is not dispositive in the proper case analysis,[7] we reverse the Court

---

[7] We accordingly disapprove of any decision of the Court of Appeals to the extent that it can be read to require a reasonable excuse or explanation in order to open default under the proper case ground. See, e.g., *BellSouth*, 293 Ga. App. at 250 (2); *Hernandez v. Schumacher Group Healthcare Consulting*, 352 Ga. App. 838, 847-848 (835 SE2d 787) (2019); *Summerville v. Innovative Images*, 349 Ga. App. 592 (2) (b) (826 SE2d 391) (2019); *Samadi v. Fed. Home Loan Mtg. Corp.*, 344 Ga. App. 111 (1) (b) (809 SE2d 69) (2017); *In re Estate of Loyd*, 328 Ga. App. 287 (3) (761 SE2d 833) (2014); *Sierra-Corral Homes v. Pourreza*, 308 Ga. App. 543 (1) (708 SE2d 17) (2011); *Herring v. Harvey*, 300 Ga. App. 560 (1) (685 SE2d 460) (2009); *NorthPoint Group Holdings v. Morris*, 300 Ga. App. 491 (1) (685 SE2d 436) (2009); *Vibratech, Inc. v. Frost*, 291 Ga. App. 133 (2) (661 SE2d 185) (2008); *Sidwell v. Sidwell*, 237 Ga. App. 716 (1) (515 SE2d 634) (1999); *Tauber v. Community Centers Two*, 235 Ga. App. 705

13

of Appeals' judgment and remand this case for the Court of Appeals to revisit its analysis consistent with this decision.[8]

*Judgment reversed and case remanded. All the Justices concur, except Bethel, J., disqualified.*

DECIDED FEBRUARY 28, 2020.

Certiorari to the Court of Appeals of Georgia — 347 Ga. App. XXV.

*Patrick W. McKee*, for appellants.

*Caldwell, Propst & DeLoach, Robert S. Carlson, Lauren J. Miller, Harry W. MacDougald*, for appellees.

---

(3) (509 SE2d 662) (1998); *First Union Nat. Bank of Ga. v. Floyd*, 198 Ga. App. 99 (2) (400 SE2d 393) (1990); *Early Co. v. Bristol Steel & Iron Works*, 131 Ga. App. 775 (206 SE2d 612) (1974).

[8] It has been a great day at the State.