**FIRST DIVISION**
**BROWN, C. J.,**
**BARNES, P. J., and WATKINS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

August 4, 2025

# In the Court of Appeals of Georgia

A25A0811. RAINBOW REAL INVESTORS, LP v. RED OAK VILLAGE CONDOMINIUM ASSOCIATION, INC.

BARNES, Presiding Judge.

In this case arising from claims of continuing nuisance and trespass, the trial court denied the motion to open default judgment filed by defendant Rainbow Real Investors, LP ("Rainbow") and subsequently granted summary judgment in favor of the plaintiff Red Oak Village Condominium Association, Inc. ("Association"). Rainbow now appeals these rulings. For the reasons discussed below, we affirm.

The record reflects that the Association is a domestic non-profit corporation and the condominium association for Red Oak Village ("Village") located in Athens-Clarke County, Georgia, and the Association maintains the common areas of the Village, including the parking lot, landscaping, and stormwater drainage facilities.

Rainbow owns the property adjacent to the Village and leases it to a skilled nursing and rehabilitation center. Rainbow's property is uphill from the Village, and Rainbow does not own a drainage easement over the Village's common areas.

On April 11, 2023, the Association sued Rainbow, alleging that as a result of Rainbow's acts and omissions, "the flow of water from [Rainbow's] property has been concentrated, increased by artificial means, and diverted onto the common [areas] of [the] Village," causing ongoing erosion and sedimentation problems. The Association asserted claims for continuing nuisance and trespass, and it sought damages, attorney fees under OCGA § 13-6-11, and permanent injunctive relief.

On April 18, 2023, Rainbow was served with the summons and complaint. Because Rainbow did not timely file an answer, the lawsuit went into automatic

default. See OCGA § 9-11-55 (a).[1] Following entry of the automatic default, Rainbow did not open the default as a matter of right within 15 days. See id.

On June 8, 2023, the Association moved for default judgment, and the trial court granted the motion on July 17, 2023. In its order, the trial court concluded that as a result of its default, Rainbow admitted that it owned the property adjacent to the Association, and that it had concentrated, increased by artificial means, and diverted

---

[1] See OCGA § 9-11-55 (a) provides:

If in any case an answer has not been filed within the time required by this chapter, the case shall automatically become in default unless the time for filing the answer has been extended as provided by law. The default may be opened as a matter of right by the filing of such defenses within 15 days of the day of default, upon the payment of costs. If the case is still in default after the expiration of the period of 15 days, the plaintiff at any time thereafter shall be entitled to verdict and judgment by default, in open court or in chambers, as if every item and paragraph of the complaint or other original pleading were supported by proper evidence, without the intervention of a jury, unless the action is one ex delicto or involves unliquidated damages, in which event the plaintiff shall be required to introduce evidence and establish the amount of damages before the court without a jury, with the right of the defendant to introduce evidence as to damages and the right of either to move for a new trial in respect of such damages; provided, however, in the event a defendant, though in default, has placed damages in issue by filing a pleading raising such issue, either party shall be entitled, upon demand, to a jury trial of the issue as to damages. An action based upon open account shall not be considered one for unliquidated damages within the meaning of this Code section.

the flow of water onto the common areas of the Village, which resulted in erosion and sedimentation problems in those areas. The trial court further concluded that based on those admissions, Rainbow was liable for committing a trespass and creating a continuing nuisance that infringed upon the Association's property rights, entitling the Association to damages, attorney fees, and injunctive relief. The trial court reserved ruling on the "amount of damages and the nature of the remedy to abate the nuisance and trespass," which would be determined in a future hearing.

On March 21, 2024, the Association moved for summary judgment, contending that as a result of the entry of default judgment on liability, Rainbow had admitted each and every material allegation of the complaint, and based on the affidavits and exhibits it was submitting with its motion, there were no genuine issues of material fact as to the amount of damages owed to the Association and its entitlement to injunctive relief. Among other damages, the Association sought to recover $98,650 in estimated costs to remediate and prevent the excessive stormwater runoff that continued to flow from Rainbow's property onto the Village's common areas.[2]

---

[2] See generally *Ga. Northeastern R. Co. v. Lusk*, 277 Ga. 245, 247 (2) (587 SE2d 643) (2003) (noting that under Georgia law, the cost to repair or restore land may be an appropriate measure of damages in a nuisance action); *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703, 708 (4) (569 SE2d 608) (2002) ("[T]he cost of repair often

4

Although Rainbow was aware in July 2023 that a default judgment had been entered against it, it did not move to open the default at that time. Approximately nine months later, on April 22, 2024, Rainbow filed its motion to open the default judgment pursuant to OCGA § 9-11-55 (b),[3] contending that its failure to answer was the result of excusable neglect and that a proper case had been made for opening default because it relied on its tenant to undertake a defense of the lawsuit on its behalf based on an indemnification provision in their lease agreement. That same day, Rainbow also filed a brief in opposition to the Association's motion for summary judgment, contending, among other things, that the Association's engineering expert failed to lay a proper foundation for admission of the written estimate of remediation

---

has been held to be an appropriate measure of damages in cases involving a continuing nuisance or trespass.") (citations and punctuation omitted).

[3] OCGA § 9-11-55 (b) provides:
At any time before final judgment, the court, in its discretion, upon payment of costs, may allow the default to be opened for providential cause preventing the filing of required pleadings or for excusable neglect or where the judge, from all the facts, shall determine that a proper case has been made for the default to be opened, on terms to be fixed by the court. In order to allow the default to be thus opened, the showing shall be made under oath, shall set up a meritorious defense, shall offer to plead instanter, and shall announce ready to proceed with the trial.

costs prepared by a third-party landscaping company or for his expert opinion that the estimated cost was reasonable and necessary to remediate the excessive stormwater runoff. Rainbow also submitted affidavits from the former and current maintenance directors of its tenant, asserting that the affidavits created a genuine issue of material fact as to whether the Association was entitled to any recovery and as to the amount of damages.

The trial court conducted a hearing on the motions to open the default judgment and for summary judgment. Following the hearing, the trial court denied Rainbow's motion to open the default judgment, concluding that Rainbow failed to show either excusable neglect or a proper case for opening the default. As to excusable neglect, the trial court determined that Rainbow failed to demonstrate that it was diligent or had a reasonable basis for relying on supposed assurances from its tenant that the tenant would handle the lawsuit. As to a proper case for opening the default, the trial court found that opening the default would cause significant prejudice to the Association in light of the ongoing nuisance and trespass; that the Association had acted promptly to obtain a default judgment; and that Rainbow had failed to act promptly to open the default upon learning that an answer had not been filed.

By separate order, the trial court granted the Association's motion for summary judgment and awarded the Association compensatory damages, attorney fees under OCGA § 13-6-11, and permanent injunctive relief. Among other things, the trial court concluded that as a result of the default, Rainbow had admitted all of the material allegations of the complaint regarding continuing nuisance and trespass. As for compensatory damages, the trial court concluded that no genuine issues of material fact existed regarding the calculation of damages and that as part of its damages, the Association was entitled to recover the $98,650 in estimated costs that were necessary to remediate the excessive stormwater runoff flowing from Rainbow's property onto the Village's common areas.

This appeal by Rainbow followed.

1. As an initial matter, we note that the argument section of Rainbow's appellate brief contains no record citations supporting its enumerations of error. The rules of this Court provide that "[e]ach enumerated error shall be supported in the brief by specific reference to the record or transcript," Court of Appeals Rule 25 (d) (1) (i), and "compliance with such rules is not optional." (Citation and punctuation omitted.) *Bell v. Lopez*, 368 Ga. App. 101, 102 (888 SE2d 284) (2023). As we have emphasized,

"[i]t is not the function of this Court to cull the record on behalf of a party in search of instances of error." (Citation, punctuation, and footnote omitted.) *Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009). In the absence of specific record citations, we may decline to consider Rainbow's enumerated errors. See Court of Appeals Rule 25 (d) (1) (i) ("In the absence of a specific reference, the Court will not search for and may not consider that enumeration."). "Nevertheless, because the record in this case is not large and the [Association has] provided sufficient citations to the record in [its] brief, we will endeavor to address the merits of [Rainbow's] appeal." *Bell*, 368 Ga. App. at 102. But "if we miss something in the record . . . due to the nonconforming brief, the responsibility rests with [Rainbow]." *Stewart v. Johnson*, 358 Ga. App. 813, 814 (856 SE2d 401) (2021).

2. Rainbow contends that the trial court erred in denying its motion to open the default judgment entered on the issue of liability pursuant to OCGA § 9-11-55 (b). According to Rainbow, it satisfied the four conditions precedent for opening a default judgment and demonstrated excusable neglect and a proper case for opening the default.

> Under OCGA § 9-11-55 (b), at any time before final judgment, a
> trial court has the discretion to open default on one of three grounds if

four conditions are met. The three grounds are: (1) providential cause, (2) excusable neglect, and (3) proper case. The four conditions precedent are: (1) a showing made under oath, (2) an offer to plead instanter, (3) announcement of ready to proceed with trial, and (4) setting up a meritorious defense. Compliance with the four conditions is a condition precedent and once met, the question of whether to open the default on one of the three grounds rests within the sound discretion of the trial court.

(Citations and punctuation omitted.) *Troika Entertainment v. Mendez*, 360 Ga. App. 904, 906-907 (4) (862 SE2d 572) (2021). "Although the rule permitting opening of default is remedial in nature and should be liberally applied, and whenever possible cases should be decided on their merits as default judgment is not favored in law, this rule is not absolute." (Citation omitted.) *COMCAST Corp. v. Warren*, 286 Ga. App. 835, 836-837 (1) (650 SE2d 307) (2007). Compliance with the requirements of OCGA § 9-11-55 (b) is mandatory before a default can be opened. Id.

Even if we assume that Rainbow satisfied the four conditions precedent for opening the default judgment, we conclude that the trial court acted within its

discretion in determining that Rainbow failed to show either excusable neglect or a proper case for opening the default.[4]

(a) *Excusable Neglect.* Excusable neglect "refers to cases where there is a reasonable excuse for failing to answer." (Citation and punctuation omitted.) *Bowen v. Savoy*, 308 Ga. 204, 207 (839 SE2d 546) (2020). "[I]t is that neglect which might have been the act of a reasonably prudent person under the same circumstances." (Citation and punctuation omitted.) *State of Ga. v. Hatcher*, 360 Ga. App. 385, 388 (2) (861 SE2d 268) (2021). "Excusable neglect" does not encompass cases of gross negligence or where the defendant acted in "willful disregard of the process of the court." (Citation and punctuation omitted.) *Bowen*, 308 Ga. at 207.

In seeking to demonstrate excusable neglect, Rainbow submitted the affidavit of its manager, Uri Kaufman. Kaufman averred that Rainbow leased its property to a tenant that operated a skilled nursing and rehabilitation center; that under the terms of the lease, its tenant was required to defend and indemnify Rainbow for any and all claims or lawsuits arising out of the operation of the property; that Rainbow "notified representatives of the tenant about the lawsuit after being served and its obligation to

---

[4] Rainbow did not seek to open the default based on the ground of providential cause.

defend the lawsuit on behalf of [Rainbow]"; and that Rainbow was "under the impression that the tenant would respond to the lawsuit on [its] behalf." Kaufmann further averred that after learning that no answer had been filed and that the Association had moved for summary judgment, Rainbow "had [its] representatives reach out" to counsel in April 2024.

In response to Rainbow's motion to open the default judgment, the Association submitted the affidavit of its attorney, which included several letters and emails as exhibits.[5] One of the attached emails, dated July 25, 2023, was from an attorney for Rainbow's tenant to the Association's attorney. Among other things, the tenant's counsel stated in the email that he recently learned of the Association's lawsuit against Rainbow and of the entry of the default judgment, and he explained that Rainbow had "become aware of the lawsuit" and was "hoping to submit filings to open the default." Tenant's counsel asked that the Association agree to a stay of the litigation so that the parties could seek to "amicably work together towards resolving" the "potential premises issues." On July 31, 2023, the Association's attorney responded

---

[5] Rainbow did not object to any of the exhibits on hearsay or authentication grounds or move to strike them. Accordingly, Rainbow waived any objection to their consideration by the trial court. See *Guise v. Leoni*, 366 Ga. App. 659, 663 (a) (883 SE2d 892) (2023).

11

that the Association would "agree to pause litigation for the time being to see if we can work things out without further time and expense." In a follow-up email dated August 2, 2023, the Association's counsel clarified that the Association would not consent to opening the default but would "wait on scheduling a damages hearing to see if this can be worked out without further litigation." When efforts to resolve the matter failed, the Association moved for summary judgment in March 2024, and Rainbow for the first time moved to open the default in April 2024.

Bearing this record in mind, we turn to our case law addressing excusable neglect. Although not directly on point, we have held in several cases that a defendant can demonstrate excusable neglect by showing that he "delivered pleadings to his insurance carrier and believed the carrier was taking the necessary steps to defend the lawsuit." *Follmer v. Perry*, 229 Ga. App. 257, 259 (1) (493 SE2d 631) (1997) (citing cases). See *Williams v. City of Atlanta*, 280 Ga. App. 785, 786-787 (635 SE2d 165) (2006); *Wright v. Mann*, 271 Ga. App. 832, 833 (611 SE2d 118) (2005); *Pinehurst Baptist Church v. Murray*, 215 Ga. App. 259, 262 (2) (450 SE2d 307) (1994). "A primary rationale for such decisions [is] that a litigant should not unnecessarily be forced into default as a consequence of having *reasonably* relied upon the word of his

fellow." (Citation and punctuation omitted; emphasis supplied.) *Follmer*, 229 Ga. App. at 259 (1). And in light of that rationale, we have explained that

> a defendant's unconfirmed belief that her insurer had timely received suit papers and was preparing a defense on the defendant's behalf is not sufficient to constitute excusable neglect that would authorize the trial court to set aside a default judgment. To authorize the setting aside of a default under circumstances where the defendant believes her insurer is handling the case, the defendant must demonstrate her own diligence and the insurer's assurance that it is handling the case.

(Citation and punctuation omitted.) *Wright*, 271 Ga. App. at 833. See *Follmer*, 229 Ga. App. at 259 (1) (explaining that cases involving reliance upon an insurer "have focused on the defendant's diligence and the insurer's assurance that it is handling the case"). See also *Williams*, 280 Ga. App. at 786-787; *Pinehurst Baptist Church*, 215 Ga. App. at 262-263 (2).

"It must be remembered that in cases such as this, no two are alike and each must stand on its own merits. The facts in each case are different and [courts] must look at each in the light of the facts peculiar to that particular case." (Citation and punctuation omitted.) *McBee v. Benjamin*, 272 Ga. App. 567, 569 (612 SE2d 802) (2005). We will not substitute our judgment for that of the trial court, and a trial court

13

abuses its discretion by refusing to open the default only if the evidence demands a finding of excusable neglect. See *Coleman v. Superior Insurance Co.*, 204 Ga. App. 78, 79 (418 SE2d 390) (1992).

Even if our insurance carrier cases apply by analogy to the present case, we conclude that the evidence did not demand a finding of excusable neglect. Although Rainbow submitted Kaufman's affidavit in an effort to show its reasonable reliance on its tenant to defend the suit on its behalf, Kaufman did not attach any documents to his affidavit, such as the lease agreement reflecting the tenant's alleged duty-to-defend Rainbow, and he supplied no dates or details regarding Rainbow's communications with the tenant. And while Kaufman averred that Rainbow notified its tenant about the lawsuit and reminded it of its duty to defend, Kaufman went on to state only that Rainbow was "under the impression" that the tenant would handle its defense, and he failed to describe any steps that Rainbow took to confirm whether an answer had been filed on its behalf.

The trial court was entitled to find that Kaufman's affidavit fell short of establishing excusable neglect, as the affidavit was vague and indefinite at best, and "an affidavit containing nothing but vague assertions of fact" lacks evidentiary value.

14

(Citations and punctuation omitted.) *D&H Constr. Co. v. City of Woodstock*, 284 Ga. App. 314, 317 (1) (643 SE2d 826) (2007). And although Kaufman averred that Rainbow notified its tenant of the lawsuit, he did not point to any assurances that Rainbow received from the tenant that it was proceeding with the defense, and our case law establishes that "merely assuming that a complaint is being handled by [a third party] is insufficient to establish excusable neglect as a matter of law." *BellSouth Telecommunications v. Future Communications*, 293 Ga. App. 247, 249 (1) (666 SE2d 699) (2008), disapproved in part on other grounds by *Bowen*, 308 Ga. at 209, n. 7. See *Wright*, 271 Ga. App. at 833 (concluding defendant failed to show excusable neglect, where the defendant "assumed that a defense was being provided for her") (punctuation omitted); *Follmer*, 229 Ga. App. at 259 (1) (determining that defendant failed to establish excusable neglect, where the defendant "believed the insurance carrier had hired an attorney and that the case was being handled appropriately," but provided no evidence that he acted with diligence or received assurances that the insurer was proceeding with a defense). Indeed, we have previously held in a case where a defendant requested a defense and indemnification under a lease agreement that the trial court was authorized to find that merely being "left with the impression"

15

that a defense would be provided was insufficient to show excusable neglect. See *Howell Enterprises v. Ray*, 163 Ga. App. 68, 69 (293 SE2d 24) (1982). Accordingly, the trial court committed no error in finding that Kaufman's affidavit failed to establish excusable neglect by Rainbow. See *Williams*, 280 Ga. App. at 786-787; *Wright*, 271 Ga. App. at 833; *Follmer*, 229 Ga. App. at 259-260 (1).

The trial court's finding also was supported by the affidavit of the Association's attorney and the emails attached thereto. The emails from the attorney for Rainbow's tenant do not reflect any assurances by the tenant to file an answer or other pleadings on behalf of Rainbow; at most, they reflect that the tenant assisted with settlement negotiations between the parties after the default already had occurred. Moreover, the emails show that Rainbow was aware of the default in July 2023 and expressed to tenant's counsel that it planned to "submit filings" to open the default. Nevertheless, Rainbow delayed until April 2024 to file a motion to open the default, even after the Association indicated by email in August 2023 that it would not consent to an opening of the default as part of any settlement negotiations. It is well-established that "any additional delay occasioned by a failure to file promptly for opening default upon its discovery can be considered in determining whether defendants' neglect was

16

excusable." (Citation and punctuation omitted.) *Ford v. Saint Francis Hosp.*, 227 Ga. App. 823, 826 (1) (490 SE2d 415) (1997). In light of the approximately nine-month delay in seeking to open default, the trial court was entitled to find that Rainbow did not act promptly to open the default and to conclude that Rainbow failed to show excusable neglect for this additional reason. See id.[6]

In sum, "[w]e hold that [the] facts and circumstances [of this case] do not demand a finding of excusable neglect, and the trial court did not abuse its discretion by refusing to open the default" on that ground. *Coleman*, 204 Ga. App. at 79.

(b) *Proper Case.* Nor did the trial court abuse its discretion in rejecting Rainbow's assertion that it showed a proper case for opening default.

> The proper case ground for opening default has been construed to confer discretion on the trial court broader than that conferred on the other two grounds, as if reaching out to take in every conceivable case where injustice might result if the default were not opened, although the defendant's failure to file a timely answer must not have resulted from wilful or gross negligence. This is an intensely fact-specific inquiry. It

---

[6] Citing *Rose Printing Co. v. EOS Group*, 155 Ga. App. 743, 744 (272 SE2d 585) (1980), Rainbow argues that an "understandable misunderstanding between the parties" is an appropriate ground to open default based on excusable neglect. But *Rose Printing Co.* is inapposite because there is no evidence of any misunderstanding between the two parties, the Association and Rainbow.

17

includes consideration of whether the defaulting party acted promptly to open the default upon learning no answer had been either filed or timely filed.

(Citation and punctuation omitted.) *Troika Entertainment*, 360 Ga. App. at 908 (4) (b). The trial court also may consider "whether the plaintiff will be harmed or prejudiced by opening the default." (Citation and punctuation omitted.) *Cruz v. Mule Camp Springs*, 374 Ga. App. 409, 414 (3) (913 SE2d 33) (2025). Because the trial court must "consider *all* the facts," "a finding that the defendant did not provide a 'reasonable explanation' or 'reasonable excuse' for failing to file a timely answer is insufficient — standing alone — to deny a motion to open default under the proper case ground." (Citations and punctuation omitted; emphasis in original.) Id. See *Bowen*, 308 Ga. at 207-208 (differentiating between the excusable neglect and the proper case grounds). "Our review of the proper-case ruling is highly deferential, and we will reverse only if the trial court manifestly abused [its] discretion." (Citation and punctuation omitted.) *Troika Entertainment*, 360 Ga. App. at 908-909 (4) (b).

We discern no manifest abuse of discretion by the trial court. As noted supra in Division 2 (a), the evidence reflected that Rainbow delayed until April 2024 to seek to open the default, although it had known for approximately nine months that its

18

tenant had failed to file an answer on its behalf and that a default judgment had been entered. Additionally, the Association presented evidence that it had already incurred $16,261 in engineering fees to design a stormwater remediation plan to permanently address the excessive runoff flowing from Rainbow's property, which could be implemented once the litigation was resolved in its favor. The Association explained, however, that if the default were opened, causing further delay in resolution of the case, implementation of the remediation plan would be put off even longer, causing the Association to "continue to incur expenses cleaning silt and sediment from its property following each rain event" and rendering its current estimated costs of remediation "stale."

In light of this record, the trial court acted within its discretion in concluding that this was not a proper case for opening the default. See *Cruz*, 374 Ga. App. at 414 (3) (noting that trial court may take into account harm or prejudice to the plaintiff as part of the proper case analysis); *Troika Entertainment*, 360 Ga. App. at 909 (4) (b) (concluding that trial court acted within its discretion in declining to open default on the proper case ground, where the defendants waited 141 days after learning of the default judgment on liability to move to open the default); *Kittrell v. Dream Builder*

*Investment*, 354 Ga. App. 687, 689 (1) (840 SE2d 461) (2020) ("In determining whether there was a proper case for opening default, the trial court needed to consider whether [the defendant] acted promptly to open the default after learning that his . . . counsel had not filed an answer and that a default judgment had been entered against him.") (punctuation omitted). Cf. *Johnson v. American Nat. Red Cross*, 253 Ga. App. 587, 590 (1) (569 SE2d 242) (2002) (determining that the trial court acted within its discretion in opening default on the proper case ground, where the defendant organization acted promptly to address the default upon learning of a misunderstanding within the organization, and the plaintiff would not be prejudiced by the opening of the default).

3. Rainbow contends that the trial court erred in granting summary judgment to the Association on the issue of damages.[7]

> Summary judgment is proper when there is no genuine issue of
> material fact and the movant is entitled to judgment as a matter of law.

---

[7] Rainbow also maintains that the trial court erred in granting summary judgment to the Association because the grant of summary judgment was predicated in part on the entry of the default judgment on the issue of liability, and, according to Rainbow, the trial court should have opened the default. This argument fails because the trial court committed no error in declining to open the default, as discussed supra in Division 2.

OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation, punctuation, and footnote omitted.) *Testamentary Trust of Moseley v. Barnes*, 245 Ga. App. 817, 817 (538 SE2d 873) (2000).

As to damages, "[it]t is well settled that, to recover damages as a result of another's wrongdoing, a party must offer proof sufficient to establish the amount of its losses," and "[t]he claimant bears the burden of showing the amount of the loss, and of showing it in such a way that the trier may calculate the amount from the figures furnished." (Citations and punctuation omitted.) *Cotto Law Group v. Benevidez*, 362 Ga. App. 850, 853-854 (1) (870 SE2d 472) (2022). "Damages cannot be left to speculation, conjecture, and guesswork." (Citation and punctuation omitted.) *Legacy Academy v. Doles-Smith Enterprises*, 337 Ga. App. 575, 582 (1) (b) (789 SE2d 194) (2016). "So, although an exact dollar figure need not be proven, the evidence must permit the trier of fact to calculate the amount of the loss with a reasonable degree of certainty." (Citations and punctuation omitted.) *Cotto Law Group*, 362 Ga. App. at 854 (1).

(a) As previously noted, the Association sought to recover $98,650 in estimated costs to remediate and prevent the flow of excessive stormwater runoff from Rainbow's property onto the Village's common areas, and in granting summary judgment to the Association on damages, the trial court concluded that the uncontroverted evidence showed that the Association was entitled to recover those estimated remediation costs. Rainbow argues that the trial court erred in awarding those damages because the Association failed to prove them with reasonable certainty using competent evidence.

To support its claim for estimated remediation costs, the Association submitted the affidavit of Jeff Carter, a licensed professional engineer who has primarily worked in the field of civil engineering for the past 25 years. Carter averred that he has regular experience "consult[ing] in the design and construction of grading plans/earthwork analysis, erosion and sediment control plans, and stormwater management planning." Carter and his engineering firm prepared the "Site Development Plans for Red Oak Village" ("Development Plans"), which were attached as an exhibit to his affidavit and included detailed diagrams and schematics of the proposed remediation work.

Carter also averred that a landscaping firm — Conner Grading & Landscaping — had prepared an estimate of $98,650 to implement the Development Plans ("Landscaping Estimate"), which was attached as an exhibit to his affidavit. Carter stated that he had reviewed the Landscaping Estimate, and that

> based on [his] experience in the field of civil engineering and specifically [his] experience with other projects requiring grading and earthwork, erosion and sediment control, and stormwater remediation, Conner's estimated cost of $98,650.00 is both reasonable and necessary to implement the . . . Development Plans in order to remediate and prevent the flow of the excessive stormwater runoff that currently flows from [Rainbow's] Property to [the] Village."

In addition to Carter's affidavit, the Association submitted the affidavit of Les McCrary, the principal and owner of the management company for the Association. The Landscaping Estimate was attached as one of the exhibits to the affidavit of McCrary, who averred that he had personal knowledge of the method in which the Association maintained its business records and sought to lay a foundation for admission of the Landscaping Estimate as a document incorporated into and maintained as a business record of the Association.

In arguing that the Association failed to prove $98,650 in estimated remediation costs to a degree of reasonable certainty, Rainbow contends that (i) the Landscaping Estimate constituted inadmissible hearsay and (ii) Carter failed to lay a sufficient foundation for his expert opinion that the Landscaping Estimate was reasonable and necessary to implement the Development Plans.

"The admissibility of evidence on motion for summary judgment is governed by the rules relating to form and admissibility of evidence generally. We review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion." (Citation and punctuation omitted.) *Gilbert v. Freeland*, 364 Ga. App. 501, 502 (874 SE2d 403) (2022). "All hearsay evidence, unsupported conclusions, and the like, must be stricken or eliminated from consideration in a motion for summary judgment." (Citations and punctuation omitted.) *R&G Investments & Holdings v. American Family Insurance Co.*, 337 Ga. App. 588, 595-596 (787 SE2d 765) (2016). With these guiding principles in mind, we turn to Rainbow's specific arguments regarding the competency of the evidence.

(i) Rainbow argues that the Landscaping Estimate constituted inadmissible hearsay that could not be considered by the trial court on summary judgment because

*Carter* did not lay a proper foundation in his affidavit for its admission. But as noted above, in moving for summary judgment, the Association also submitted the affidavit of McCrary, who sought to lay a foundation for admission of the Landscaping Estimate as an integrated business record of the Association. See OCGA § 24-8-803 (6) (business record exception to the rule barring hearsay);[8] *Clark v. Jefferson Capital Systems*, 374 Ga. App. 167, 173 (2) (911 SE2d 713) (2025) (explaining that "when routine, factual documents made by one business are transmitted and delivered to a second business and then entered in the regular course of business of the receiving business, such documents are admissible as business records") (citation and punctuation omitted); *Preview Restaurants v. Shops at 2221 Peachtree*, 371 Ga. App. 862, 867 (2) (903 SE2d 320) (2024) (concluding that trial court acted within its

---

[8] A business record is admissible as an exception to the rule against hearsay if the record was:

(A) made at or near the time of the described acts, events, conditions, opinions, or diagnoses; (B) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (C) kept in the course of a regularly conducted business activity; and (D) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with paragraph (11) or (12) of Code Section 24-9-902 or by any other statute permitting certification.

OCGA § 24-8-803 (6).

discretion in admitting, under the business record exception, a restoration cost estimate prepared by one business that was received by and incorporated into and maintained in the business records of another business); *Ciras, LLC v. Hydrajet Technology, LLC*, 333 Ga. App. 498, 501 (773 SE2d 800) (2015) (concluding that business record exception applied to routine bank records authenticated by affidavit as having been transferred to Wells Fargo, and integrated into its own business records, in connection with its acquisition of another bank). See generally Milich, Ga. Rules Of Evidence § 19:16 (Sept. 2024 Update) (discussing admission of records of one business integrated into the records of another business under the business record exception to the hearsay rule). Notably, Rainbow did not argue in the court below that McCrary failed to lay a sufficient foundation for admission of the Landscaping Estimate as an integrated business record of the Association or otherwise object on hearsay or authentication grounds to the McCrary affidavit or any of the attached exhibits. Rainbow therefore waived any objection to the admission of the McCrary affidavit and the Landscaping Estimate attached thereto as an exhibit, and the trial court was entitled to consider them. See *Albright v. Terminal Investment Corp.*, 373 Ga.

App. 798, 802 (1), n. 4 (909 SE2d 672) (2024); *Guise v. Leoni*, 366 Ga. App. 659, 664 (a) (883 SE2d 892) (2023).

(ii) Rainbow further argues that Carter failed to lay a sufficient foundation for his expert opinion that the Landscaping Estimate was reasonable and necessary to implement the Development Plans. We disagree. Carter worked in the field of civil engineering for over 25 years and had experience in "consult[ing] in the design and construction of grading plans/earthwork analysis, erosion and sediment control plans, and stormwater management planning." According to his affidavit, Carter and his firm created the Development Plans, he personally reviewed the Landscaping Estimate, and his opinions related to the Landscaping Estimate were "based on [his] experience in the field of civil engineering and specifically [his] experience with other projects requiring grading and earthwork, erosion and sediment control, and stormwater remediation."

"The question of whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." (Citation and punctuation omitted.) *Ga. Dept. of Transp. v. Owens*, 330 Ga. App. 123, 127 (1) (766 SE2d 569) (2014). In light of Carter's

credentials and experience, the trial court did not manifestly abuse its discretion in find that Carter was qualified to render opinions regarding the Landscaping Estimate and implementation of the Development Plans. See id. at 127-128 (1) (a) (concluding that trial court acted within its discretion in concluding that industrial and mechanical engineer was entitled to offer expert opinion based on his "considerable credentials with respect to the research, study and application of [the pertinent type of] engineering"). See also OCGA § 24-7-702 ("A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise . . . .").[9] Furthermore, Carter's opinion was based on his personal knowledge of the preparation of the Development Plans and his review of the Landscaping Estimate, and our law is clear that an expert may base his opinion on personal knowledge as well as on facts or data supplied by others. See OCGA § 24-7-

---

[9] OCGA § 24-7-702 (b) provides:

(b) A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise, if: (1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) The testimony is based upon sufficient facts or data; (3) The testimony is the product of reliable principles and methods; and (4) The expert has reliably applied the principles and methods to the facts of the case.

703 (expert opinion can be based on facts or data supplied by others);[10] *Sanchious v. State*, 359 Ga. App. 649, 653 (1) (a) (859 SE2d 814) (2021) ("It is well established that an expert may base her opinions on data gathered by others.") (citation and punctuation omitted). Consequently, the trial court committed no error in concluding that Carter was qualified and laid a sufficient foundation to offer his expert opinions in this case.

---

[10] OCGA § 24-7-703 provides:

> The facts or data in the particular proceeding upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, such facts or data need not be admissible in evidence in order for the opinion or inference to be admitted. Such facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

As noted supra in Division 3 (a) (i), Rainbow waived any objection to admission of the Landscaping Estimate on hearsay and authentication grounds by failing to object to the McCrary affidavit and attachments thereto. In any event, "it is well established that an expert properly may rely on inadmissible facts and data such as hearsay in reaching his opinion, if the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." (Citations and punctuation omitted.) *Ovation Condo. Assn. v. Cox*, 374 Ga. App. 681, 695 (1) (c) (ii) (913 SE2d 819) (2025).

For the foregoing reasons, the trial court was authorized to conclude that the Association came forward with competent evidence establishing $98,650 in estimated remediation costs that were reasonable and necessary to implement the Development Plans. Therefore, the burden shifted to Rainbow to come forward with rebuttal evidence to avoid the grant of summary judgment to the Association on the issue of damages. See *Wilson v. Inthachak*, 372 Ga. App. 341, 342 (904 SE2d 414) (2024) ("Once the movant has made a prima facie showing that he is entitled to judgment as a matter of law [on summary judgment], the burden shifts to the respondent to come forward with rebuttal evidence.") (citation and punctuation omitted).

(b) Rainbow contends that it presented rebuttal evidence on the issue of damages such that the trial court erred in granting summary judgment to the Association. Specifically, in opposing summary judgment, Rainbow submitted the affidavits of its tenant's former and current maintenance directors, and Rainbow argues that the affidavits created a genuine issue of material fact as to damages.

In granting summary judgment to the Association, the trial court did not consider the aforementioned affidavits, and we discern no error by the trial court in light of the default judgment that was entered in the case. The tenant's former

30

maintenance director averred that he was unaware of any stormwater runoff flowing from Rainbow's property to the Association's property and that any problems with runoff arose only after the developer of the Village removed trees and graded the property for townhouses. The current maintenance director averred that the tenant constructed a 75-foot trench and installed a pool liner and drainage gravel that diverted stormwater runoff away from the Association's property, and that since that time, the tenant had not been notified of any other runoff issues.

"As set forth above, defendant in default is in the position of having admitted each and every material allegation of the plaintiff's petition except as to the amount of damages alleged. The default concludes the defendant's liability, and estops him from offering any defenses which would defeat the right of recovery." (Citation and punctuation omitted.) *Chironsoft Co. v. Yokim Marketing*, 374 Ga. App. 603, 612 (4) (912 SE2d 69) (2025). "And[ ] defenses which go to the right of recovery are not available to [a defendant] in default even though the same defense may also go to the assessment of damages." (Citation and punctuation omitted.) *Paris v. E. Michael Ruberti, LLC*, 355 Ga. App. 748, 752 (845 SE2d 720) (2020). See *Fowler v. Atlanta Napp Deady*, 283 Ga. App. 331, 336 (3) (641 SE2d 573) (2007) ("A defendant in

default may not introduce evidence that disputes liability even though it may also go to the assessment of damages.") (citation and punctuation omitted). Because the affidavits of the former and current maintenance directors disputed liability by challenging causation and the existence of a continuing nuisance, the trial court did not err in declining to consider them. See id. And given that Rainbow failed to present any other potential rebuttal evidence to the Associations' damages claim, the trial court properly granted summary judgment to the Association on the issue of damages. See *Wilson*, 372 Ga. App. at 342.

*Judgment affirmed. Brown, C. J., and Watkins, J., concur.*